## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

**NILES C. TAYLOR AND
ANGELA J. TAYLOR,**
               Debtors                        **Bankruptcy Appeal**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

                                    **No. 09-02479**

**APPEAL OF THE UDREN LAW FIRM,
MARK J. UDREN, ESQUIRE AND
LORRAINE DOYLE, ESQUIRE,**
               Appellants.

---

### BRIEF OF APPELLANTS

---

**Appeal from the Order of the United States Bankruptcy Court
for the Eastern District of Pennsylvania dated April 15, 2009**

**Wilentz Goldman & Spitzer, P.A.
Daniel S. Bernheim, 3d, Esquire
Jonathan J. Bart, Esquire
Dashika R. Wellington, Esquire
Attorneys for Appellants**

**Two Penn Center, Suite 910
Philadelphia, PA 19102
215-636-4466**

# TABLE OF CONTENTS

                                                                                          **Page**

TABLE OF AUTHORITIES ....................................................................................................ii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................................................2

STANDARD AND SCOPE OF REVIEW .....................................................................................3

STATEMENT OF THE CASE........................................................................................................4

    A.   Procedural History ..............................................................................................................4

    B.   Statement Of Facts.............................................................................................................9

        1.   Relevant History Of The Taylor Loan And The Motion For Relief............................9

        2.   The Flood Insurance Issue And The Objection To Claim ..........................................13

ARGUMENT ................................................................................................................................17

I.      THE PROCEDURE UTILIZED BY THE BANKRUPTCY COURT BELOW
       VIOLATED RULE 9011(c)(2) AND THE SANCTIONS IMPOSED MUST
       THEREFORE BE VACATED AS A MATTER OF LAW ...............................................17

II.     THE UDREN FIRM DID NOTHING WRONG................................................................21

III.    THERE WAS NO BASIS WHATSOEVER FOR IMPOSITION OF VICARIOUS
       LIABILITY AGAINST MARK J. UDREN, ESQUIRE OR LORRAINE DOYLE,
       ESQUIRE.............................................................................................................................26

CONCLUSION..............................................................................................................................28

CERTIFICATE OF SERVICE ......................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*In re Caskie-Johnson,*
  2007 WL 496675 (D. Col. 2007) (at *3) ........................................................ 18
*In re Pennie & Edmonds LLP,*
  323 F.3d 86 (2d Cir. 2003) ........................................................................... 19
*In re Seminole Walls and Ceilings Corp.,*
  388 B.R. 386 (Dist. Ct. M.D. Fla. 2008) ................................................. 3, 4, 9
*In re Thomas Consolidated Industries,*
  456 F.3d 719 (7th Cir. 2006) .......................................................................... 3
*In re Varat Enterprises, Inc.,*
  81 F.3d 1310 (4th Cir. 1996) .......................................................................... 3
*Kaplan v. Daimerchysler, A.G.,*
  331 F.3d 1251 (11th Cir. 2003) ............................................................... 18, 19
*MHC Inv. Co. v. Reacom Corp.,*
  323 F.3d 620 (8th Cir. 2003) ....................................................................... 18

## Statutes

11 U.S.C. §362(d)(2) ..................................................................................... 24
28 U.S.C. §158(a)(1) ....................................................................................... 1
28 U.S.C. §158(c)(2) ....................................................................................... 1

## Rules

Fed. R. Bankr. P. 8013 .................................................................................... 3
Rule 11 ......................................................................................................... 18
Rule 11 (c)(1)(B) ...................................................................................... 18, 19
Rule 8002 ........................................................................................................ 1
Rule 9011 ................................................................................................ passim
Rule 9011(c) .................................................................................................. 26
Rule 9011(c)(1)(A) .................................................................................. 18, 20
Rule 9011(c)(1)(B) ................................................................................. passim

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from an Opinion and Order entered in the United States Bankruptcy Court for the Eastern District of Pennsylvania at Bankruptcy No. 07-15385 DWS by the Honorable Diane Weiss Sigmund entered on April 15, 2009. That Opinion and Order, *inter alia*, imposed sanctions against the Udren Law Firm, Mark J. Udren, Esquire and Lorraine Doyle, Esquire initiated pursuant to Rule 9011(c)(1)(B) by way of an Order dated June 9, 2008.

As an appeal of a final Order from a Bankruptcy Court, this Court has jurisdiction of this appeal pursuant to 28 U.S.C. §158(a)(1). Appellate jurisdiction properly lies with this court as a Notice of Appeal was timely filed pursuant to the procedure set forth in 28 U.S.C. §158(c)(2) and Rule 8002 of the United States Rules of Bankruptcy Procedure.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the Bankruptcy Court commit legal error in assessing sanctions against the appellants in a manner which deviated from the strict dictates of Rule 9011(c)(1)(B) of the Federal Rules of Bankruptcy Procedure?

Answered in the Affirmative below.

2.      Did the Bankruptcy Court abuse its discretion by imposing sanctions against Lorraine Doyle, Esquire, Mark J. Udren, Esquire and the Udren Law Firm when the documents presented to the Court were literally and indisputably correct at the time they were filed and no misrepresentations were made at any time by the Udren Law Firm to the Bankruptcy Court?

Answered in the Affirmative below.

3.      Did the Bankruptcy commit legal error by vicariously imposing sanctions against Mark J. Udren and Lorraine Doyle?

Answered in the Affirmative below.

## STANDARD AND SCOPE OF REVIEW

The applicable standard for review by this Court on an appeal of the Bankruptcy Court's factual findings are set forth in Bankruptcy Rule 8013 which provides, "on an appeal the District Court...may affirm, modify or reverse a Bankruptcy Court's judgment, order of decree or remand with instructions for further proceedings.  Findings of Fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous..." Fed. R. Bankr. P. 8013.  The Bankruptcy Court's legal determinations are reviewed *de novo*.  *In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1314 (4th Cir. 1996).  A Bankruptcy Court's decision to impose sanctions, unless rooted in an error of law, are subject to an abuse of discretion standard of review.  *In re Thomas Consolidated Industries,* 456 F.3d 719, 724 (7th Cir. 2006).  In applying these standards, the scope of the Court's review is that it "freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular fact or finding to see if it meets the test of substantiality." *In re Seminole Walls and Ceilings Corp.,* 388 B.R. 386, 391 (Dist. Ct. M.D. Fla. 2008).

## STATEMENT OF THE CASE

### A.   Procedural History

On May 30, 2007, a foreclosure judgment was entered in the Court of Common Pleas of Chester County in favor of HSBC Mortgage Corp. USA ("HSBC") against Niles and Angela Taylor (the "Taylors" or "Debtors") in the amount of $88,194.06. Exh. U-2; Tr. 5/1/08 at pp. 13; 14; Tr. 8/8/09 at pp. 19-21. This judgment included unpaid escrow balances for flood insurance. No motion was filed to open or strike the judgment, nor was any appeal filed. *Id.* A writ of execution was issued scheduling a sheriff's sale for September 20, 2007. [Exh. U-3]. The Debtors, Niles C. Taylor and Angela J. Taylor, filed a petition under Chapter 13 of the United States Bankruptcy Code on September 16, 2007, on the eve of a Sheriff Sale of the Debtors residence located at 218 Loomis Avenue, Coatesville, PA 19320 (the "Property"). U-15. Schedules were filed on September 16, 2007 and an amended Schedule J was filed on January 1, 2008.[1] Of particular note in the schedules was the fact that the Debtor scheduled the current expenditure for home mortgage payment as being $1,572.00 (Schedule J, Line 1). On October 9, 2007, Claim #8 was filed on behalf of HSBC Mortgage Corp. (USA) in the amount of $93,256.29. The claim was filed by a firm known as Moss Codillis, LLP. On January 15, 2008, HSBC, represented by the Udren Law Firm and Lorraine Doyle, filed a Motion for Relief from Stay. Exhibit U-4. Requests for Admission were served with the motion to the Debtors' counsel, Joye McDonald-Hamer of the JMH Law Office, 31 South High Street, West Chester, PA 19382. Docket Item 20; Exhibit U-7. Request No. 3 asked the Debtors to admit that they

---

[1] *See*, Docket Entries 1, 16. For the ease of the court in retrieving these documents, the docket report from the Taylor case is attached hereto as Exhibit "A."

had inconsequential equity in the Property and that the Property was not necessary to an effective reorganization or plan.

Pursuant to the Notice of Motion for the Motion for Relief from Stay, responses were due by January 30, 2008 and responses to the Requests for Admissions were due by February 15, 2008. When no timely response was filed to the Motion for Relief, a Certificate of No Response was filed on behalf of HSBC on January 31, 2008. Docket Item 21; Exhibit U-17. Subsequent to that certification, however, a response in opposition to the motion for relief was filed on February 4, 2008, alleging that payments had been tendered but rejected by HSBC. Docket Item 22; Exhibit U-9. No response to the request for admissions ever was served or filed by the Debtors. As a result of the allegations in the response to the Motion for Relief from Stay, however, the hearing was continued by the Udren Firm as a gesture of good faith until March 18, 2008.

On March 17, 2008, an objection to HSBC's claim was filed by Ms. McDonald-Hamer (Docket Entry 31) which caused counsel for HSBC to again adjourn the Motion for Relief from Stay until May 1, 2008 to investigate its assertion that flood insurance charges were improper. On March 19, 2008, Ms. McDonald-Hamer on behalf of the Debtors filed an Amended Answer and "Proof of Payment" (Docket Item 33; Exhibit U-5) which was contradictory to the earlier Answer (which asserted payments had been rejected) and now asserted that from the date of filing, five payments had been made and the Debtors were therefore current. The Amended Answer to the Motion for Relief attached the fronts and backs of three of those checks, but the fronts only of the two checks purporting to represent payments in February and March 2008. A

reply to the Objection to Claim was filed on behalf of HSBC by Lorraine Doyle of the Udren Law Firm on March 27, 2008. Docket Item 36; Exhibit T-4.

On May 1, 2008, hearings were held both on the Motion for Relief from Stay and on the Objection to Claim (Docket Entries 45, 48-49). The Motion for Relief from Stay was denied and the Objection to Claim was continued until June 5, 2008. No transcript was made of this hearing until June 18, 2008 (Docket Entry 54); however, the Order stated that the Motion had been denied "for the reasons stated on the record." The actual colloquy in Court emanated from a discussion on **post petition payments** and the application of those payments to flood insurance. The Court stated to the Udren Law Firm's young associate, David Fitzgibbon as follows:

> THE COURT: I don't have any evidence on – I mean – I want you to relist this to make a record on proof of the claim on the payments that they give you in accounting."
>
> MS. McDONALD-HAMER: That's what I was asking you, yes.
>
> THE COURT: Yeah, well, lets do this. I'll re-list the Proof of Claim but I don't think its going to benefit from an evidentiary hearing. You need to get an accounting from your client. They need to find out what's happened to her payments and whether there are other payments that they've lost track of and maybe you can resolve it."

May 1, 2008 Transcript (Docket Entry 54 at pp.45-46).

On June 9, 2008, following a hearing on June 5, 2008, the Court issued an Order (Docket Item 52) in which the Court stated that:

> "[d]uring the course of those [relief from stay/objection to claim] hearings certain questionable practices engaged in by attorneys and agents of HSBC were revealed.

And during those hearings it was apparent that local counsel for HSBC had no knowledge of the matters he was charged to handle nor any ability to communicate with anyone who had such knowledge.

And during those hearings Fitzgibbon has acknowledged that HSBC was unresponsive to the Court's directive to provide Debtor with an accounting and an explanation about contested flood insurance charges; it is hereby Ordered that by June 20, 2008 HSBC shall provide a full accounting to Debtor by transmitting a loan history in form the Debtor and her counsel can understand as well as an explanation about the flood insurance charges; and it is further Ordered that a continued hearing on the objection shall be held on July 16, 2008 at 9:30 a.m....at which the following person shall appear in addition to the Debtor and counsel... 5. The partner in charge of HSBC's bankruptcy work at the Udren Law Office local counsel of HSBC. 6. Lorraine Guizzara Doyle, Esquire of the Udren Law Office. 7. David Fitzgibbon, Esquire of the Udren Law Office.

The Court further stated in footnote 5 of that Order:

5. The purpose of the hearing is two-fold; (1) to address the Objection to HSBC's claim and (2) to investigate the practices employed in this case by HSBC and its attorneys and agents and consider whether sanctions should issue against HSBC, its attorneys and agents. The parties are encouraged to resolve the Objection prior to the hearing. However, the hearing will be held for the second purpose notwithstanding any settlement of the Claim Objection.

Docket Entry 52.

This is the **sole** Order which initiated five days of hearings, which were conducted on July 23, 2008, August 8, 2008, October 21, 2008, October 23, 2008 and December 17, 2008. Docket Items 65, 70, 121, 122 and 169. The vast majority of the testimony presented in the hearings concerned the procedures utilized by Lender Processing Services, Inc. f/k/a Fidelity Nat. Information Services, Inc. and Moss Codillis, LLC rather than the actions of the Appellants, the Udren Law Firm, Mark J. Udren, Esq. and Lorraine Doyle, Esq. On several

occasions during the proceedings, counsel for the Udren Firm, Mr. Udren and Ms. Doyle objected to the procedure employed by the Court in that no Order to Show Cause had been issued with specific charges in the June 9th Order, making it difficult to ascertain what they were required to defend. At the conclusion of the five days of hearings, briefs were filed by the United States Trustee, the Udren Law Office, LPS and HSBC.

On April 15, 2009, the Court entered an Order and a 58-page Opinion which, *inter alia,* imposed sanctions against Lorraine Doyle, Esquire, Mark J. Udren, Esquire and the Udren Law Firm. Docket Item 3, 193-194. On the same day, Judge Sigmund also issued a separate Order finding that the Debtors' counsel had materially misrepresented facts to the Court and had deficiently represented the Debtors in those proceedings. Docket Item 195. The Udren Law Firm filed a timely Notice of Appeal (Docket Item 207) and filed a Motion for Stay Pending Appeal which was heard by the Honorable Steven Raslavich following the retirement of Judge Sigmund. Docket Item 208. After a contested hearing, Judge Raslavich granted the Motion for Stay Pending Appeal. Docket Item 248. This Appeal now ensues.

B.    **Statement Of Facts**

1.    Relevant History Of The Taylor Loan And The Motion For Relief

Pursuant to a Mortgage and Note executed by the debtors in favor of HSBC, and a subsequent default, the parties entered into a forbearance agreement.  The debtors admitted that they made the first payment, but no payments after February 2007 were made.  Angela Taylor; R. 8/8/08 at p. 17.  Accordingly, the Udren Firm filed a foreclosure action on behalf of HSBC against the debtor.  Id.  A foreclosure judgment in the amount of $88,194.06, including an escrow for flood insurance, was entered on May 30, 2007.  5/1/08 transcript at pp. 13-14; A. Taylor; 8/8/08 at pp. 17-18; Exhibit U-2.  A writ of execution was issued which scheduled a foreclosure sale for September 20, 2007.  Exhibit Udren-3; testimony of A. Taylor; 8/8/08 at p. 18.  Just prior to the sale, the Taylors filed a voluntary petition in bankruptcy which scheduled a monthly mortgage payment of $1,572.00 - - an amount which included flood insurance premiums.  Petition, Schedule J.

In October 2007, the Moss; Codillis firm filed a proof of claim on behalf of HSBC. Claim No. 8; Exhibit T-5.  The proof of claim was inaccurate as to the amount monthly payment due from the debtor post-petition, and attached an incorrect note.  R. 10/23/ 08 at p. 144 (Maria Borrensen).  A proof of claim is not a document, however in which anything but pre-petition claims are required to be asserted.  Thus, the monthly payment was not required to be included in this filing.  In actuality, the monthly payment, according to the records of HSBC reviewed by the Udren Firm on the Newtrak System prior to filing the Motion for Relief were $1,455.83 per month.  D. Fitzgibbon; R. 8/8/08 at p. 31.

The following is the payment history in the post-petition period:

| Date of Check | Date Presented[2] | Amount of Check |
|---|---|---|
| 10/05/07 | 10/16/07 | $1,277.12 |
| 11/16/07 | 11/26/07 | $1,277.12 |
| 01/11/07 | 01/17/07 | $1,277.12 |
| 02/09/07 | 02/19/07 | $1,277.12 |

This history is confirmed on the Debtors Exhibit -1, a complete loan history which confirms that post-petition payments, which were due on the first of the month, were received on October 16, November 26, January 17, February 19 and three checks were finally paid on May 5 - - after the Motion for Relief hearing pursuant to Debtors counsel's April 23 letter.  As of May 1st, the Debtors' February payments still had not cleared - - a four month delinquency without consideration of the flood insurance issue.[3]

Because flood insurance had been purchased for the debtors as a result of their property's inclusion on the FEMA flood plain map, the amount due under the mortgage, including flood insurance was $1,455.83.  The first post-petition payment, for October 2007 in the amount of $1,277.12 was thus held in suspense until the full $1,455.83 was received.  The second payment dated 11/16/07 (a late payment) was applied such that the full $1,455.83 was applied for October and $1,040.18 were left in suspense.  D. Fitzgibbon; R. 8/8/08 at p. 31. When no payment was received in December nor was a payment received prior to January 15, 2008, the debtors were now three months in arrears of full payments (October, November and

---

[2] The date presented is the date on which HSBC, having received the check, presented the check for payment.

[3] For the Court's convenience, the post-petition payment history set forth in the last 2 pages of Exhibit D-1 is attached hereto as Exhibit "B."

December) and two months in arrears where no payment at all had been made. D. Fitzgibbon; R. 8/8/08 at p. 31. Accordingly, HSBC provided a code into the Newtrak System requesting the assignment of counsel to prosecute a motion for relief from stay. The Udren Firm was selected as the firm to handle the bankruptcy proceedings relating to the motion for relief from stay. See, D. Fitzgibbon discussion of referral process at pp. 108-120 of the 8/8/08 transcript. The Udren Firm received screen prints showing the post-petition history, directly from HSBC. D. Fitzgibbon; 8/8/08 at p. 36. Mr. Fitzgibbon worked on the motion for relief (D. Fitzgibbon; 8/8/08 at p. 28) which later was reviewed and signed by Lorraine Doyle, Esquire of the Udren Firm.

Along with the motion for relief (Exhibit U-4), the Udren Firm served upon the Taylors' counsel a set of requests for admissions (Exhibit U-7) requesting admissions as to the default and lack of equity in the property. When the debtors failed to file a timely response to the motion for relief, The Udren Firm entered a Certificate of No Answer. Exhibit U-8. No response to the request for admissions **ever** was received. R. 5/1/08 at p. 8. Belatedly, on February 4, 2008, the debtors filed an opposition to the motion for relief stating that payments had been tendered to HSBC, but had been returned. Exhibit U-9. This answer was demonstratively false, as the debtor had, by the time of that answer, made three payments, which had been received and accepted by HSBC on October 16th, November 26th and January 17th, which still left two payments delinquent even before the issue of flood insurance could be considered to determine if there was an additional partial payment owed. See, Exhibits D-1, U-5. However, in good faith and an attempt to verify whether proper payments had been made, and were missing, the Udren Firm postponed the scheduled relief hearing to ascertain whether

payments were tendered and refused. R. 8/8/08 at p. 39. The debtors then, implicitedly recognizing that their prior filing was false, filed an "amended response" on March 19, 2008. (Exhibit U-5). This amended response attached the payments which had been made but, once again, made material misrepresentations to this Court by alleging that two additional payments, dated March 8, 2008 and March 17, 2008 had been sent to HSBC. Fronts (but not backs) of these checks were attached to the Amended Response. Once again, because of this representation, Udren, in good faith, postponed the hearing to verify whether the payments had been made. When it turned out that the two payments represented to have been sent had not been received, the Udren Firm went forward with the rescheduled hearing date of May 1, 2008. Just prior to this hearing, by letter dated April 23, 2008 (U-10), debtors' counsel finally sent by regular mail to the Sheriff's Sale Department at the Udren office three checks, two of which she previously had represented had been paid to HSBC six weeks earlier. See, Exhibit U-5.

Mr. Fitzgibbon learned about this just prior to the hearing and accurately related to the Court that The Udren Firm had received these checks and forwarded them to HSBC, although payment on these checks had not yet been collected. As Exhibit D-1 reveals, these payments were first received and paid on May 5, 2008 - - after the date of the hearing. It is clear from the record, that Mr. Fitzgibbon honestly disclosed to the Court that these payments were received by Udren and that the only issue was that of flood insurance, because the debtors' continual refusal to pay for the flood insurance had resulted in a $200 underpayment for each payment that was being made. Indeed, the Court specifically noted at the May 1 hearing that the only remaining issue was charges for flood insurance. R. 5/1/08 at p. 38. The Court also understood and counsel for the Debtors should have understood that it was the Debtors' obligation to

remove their property from the FEMA flood plain map. R. 5/1/08 at pp. 37-38. There never was any issue concerning either pre or post-petition application of payments and Mr. Fitzgibbon's only error was to panic when confronted with the unexpected and untrue accusation by Debtors' counsel on June 5, 2008 that he had failed to provide a complete accounting and that payments were somehow misapplied.

        2.     The Flood Insurance Issue And The Objection To Claim

Unfortunately, as with the facts relating to the payment history in the motion for relief, the Objection to Claim and the flood insurance issue was something which never necessitated any litigation before this Court. It is undisputed that as a result of a FEMA map amendment in September 2006, the debtors' property was placed in a flood zone. Accordingly, flood insurance was procured by the lender to protect its interests. The debtors conceded in their testimony that they did not pay the flood insurance when it was assessed as part of the forbearance payment. R. 5/1/08 at p. 14. In their schedules, however, the debtors clearly budgeted for flood insurance, since they scheduled the monthly payment was being $1,572.00, a number which could only be rationalized by inclusion of flood insurance. Debtors' Schedule J. The debtors conceded that flood insurance was imposed in January 2007 and was unpaid, and the foreclosure judgment was entered thereafter, including forced placed flood insurance. See, discussion and colloquy at pp. 17-21 of the August 8th hearing. The inclusion of flood insurance on the proof of claim was the **only** objection to the proof of claim.[4]

---

[4] It did come out at the hearing that the Moss Codillis firm, which filed the proof of claim, made several errors, including an incorrect mortgage note and an incorrect payment. Of course, as noted previously, a proof of claim is not filed for the purpose of establishing post-petition payments which are due and the proper note was attached by way of amendment to the objection to claim. The errors in the proof of claim are not, therefore, relevant to the objection based on the inclusion of flood insurance nor are they in any way the basis of any of the Udren Firm's filings in this case.

The testimony of Kimberly Graves, Vice President of Bankruptcy Foreclosure and Claims at HSBC detailed the efforts made by HSBC to communicate with the debtors concerning the flood insurance issue. According to Ms. Graves, FEMA changed its flood maps in September 2006 (7/23/08 transcript at pp. 196, 204). Both the Udren Firm and HSBC had informed the debtors and her attorney that what they needed to do was apply to FEMA to get a letter of map amendment. Once that was accomplished, HSBC could delete the forced placed flood insurance. Fitzgibbon; R. 8/8/08 at pp. 48-49. Ms. Graves prepared a timeline indicating all of the communications with HSBC had with the debtors concerning the flood insurance. See, Exhibit Udren-12. On March 14, 2008, HSBC sent the debtors an "I disagree package" (one of two times it was sent) which notified the customer that they were in a required flood zone and outlined the procedure on how to remove a flood zone designation and eliminate the necessity for flood insurance. Fitzgibbon; R. 8/8/08 at p. 50. On several occasions after that, Mr. Fitzgibbon requested from the debtors' counsel whether she had obtained her letter of map amendment from FEMA. Fitzgibbon; R. 8/8/08 at p. 52. No such document ever was provided. It was not within the power or control of the Udren Firm to remove flood insurance unilaterally. This had to be done by the Debtors and their counsel. Fitzgibbon; 8/8/08 at p. 53. This was recognized by the Bankruptcy Court, as well. Tr. 5/1/08 at 37-38. Finally, in her April 23rd letter to the Sheriff's Sale Department of the Udren Firm (enclosing the checks which were forwarded to HSBC), the debtors' counsel attached an application for the removal of flood insurance which had been submitted to FEMA. Fitzgibbon; R. 8/8/08 at p. 53.[5]

---

[5] The April 23rd letter is Exhibit Udren-10.

At the May 1st hearing, the debtors' counsel agreed with the Court that the only issue that remained was flood insurance. May 1st transcript at p. 38. As of that date, no letter of map amendment had been received from FEMA. The Court instructed the debtors that it was their obligation to remove this designation. R. 5/1/08 at pp. 37-38. Accordingly, there is nothing inaccurate about the response to the objection to claim and, as with the payment issue, the Udren Firm bent over backwards to assist the debtors and their counsel by providing them a specific road map on how to remove the flood plan designation from the FEMA map such that flood insurance could be deleted. Somehow, the debtors' counsel failed to read the documents or understand these instructions and simply believed that if a statement from an engineer were presented to the Udren Firm or to HSBC, flood insurance should be deleted. And as flood insurance was the **only** issue in dispute, it also was the only reason that the debtors' counsel was seeking an accounting. See, pp. 38-39 of May 1, 2008 transcript, where the debtors counsel stated that the only issue with respect to the proof of claim was the difference between the 1453 dollar and the 1277 number (the flood insurance change), before going on to say "well that's why we requested an accounting."·

The accounting issue arose solely out of the dispute over whether flood insurance should be included in the monthly payment. There never was a request for a complete pre-petition and post-petition accounting of all payments made under the loan. That issue first arose when the Court misinterpreted the debtors counsel's statement at pp. 38 and 39 of the May 1, 2008 transcript to the effect that she had, for some time, been requesting a full accounting of the loan, and directed that an accounting be provided. Believing that the accounting requested was a post-petition accounting, since no flood insurance payments were

made pre-petition, Mr. Fitzgibbon <u>did</u>, in fact, request a post-petition accounting. R. 8/08/08 transcript at p. 59. However, the Court believed that a full accounting had been directed and, when the debtors' counsel falsely stated at the June 5th hearing that she was requesting a full accounting for the entire loan and had been doing so for months, the Court was understandably annoyed at Mr. Fitzgibbon that led to the issuance of the June 9th Order which commenced these proceedings. It is undisputed, however, that Mr. Fitzgibbon admitted at the August 8th hearing, he simply panicked. As the record reveals, and as the Trustee acknowledged, he was capable at all times of communicating with HSBC for a complete accounting. Indeed, once he understood what was required by the Court after the June 5th hearing, a complete accounting was provided forthwith. Other than being young and inexperienced, Mr. Fitzgibbon did nothing to warrant the imposition of sanctions. Certainly, nothing done by Ms. Doyle, who filed a <u>completely</u> accurate motion for relief and response to claim objection warrants sanctions. Mr. Udren's "offense" is still unstated - - he apparently was sanctioned from not being personally familiar with the workings of the Newtrak system. The only documents that were filed with this court containing knowingly false statements were the two responses to the motion for relief filed by the Debtors, which first falsely represented that payments had been refused and returned by HSBC and the amended response to the motion for relief, which represented that two checks which Debtors' counsel had in her possession and sent by mail to Udren more than a month later, already had been sent to HSBC.

## ARGUMENT

I.    **THE PROCEDURE UTILIZED BY THE BANKRUPTCY COURT BELOW
      VIOLATED RULE 9011(c)(2) AND THE SANCTIONS IMPOSED MUST
      THEREFORE BE VACATED AS A MATTER OF LAW**

In its April 15, 2009 Order, the Bankruptcy Court imposed sanctions against the Udren

Law Firm, Mark J. Udren, Esquire and Lorraine Doyle, Esquire. The sole basis for the five

days of hearings which transpired was the Court's Order of June 9, 2009 (Docket Item 52).

That Order, as noted above, suggested that "certain questionable practices engaged in by

attorneys and agents of HSBC were revealed [in the May 1st and June 5th hearings]," and that

"it was apparent that local counsel for HSBC had no knowledge of the matters he was charged

to handle nor any ability to communicate with anyone who had such knowledge." The Court

ordered that the partner in charge at the Udren Law Office, Lorraine Doyle, Esquire and David

Fitzgibbons, Esquire appear before the Court, obtain a copy of the transcript of the May 1st and

June 5th hearings and "review same by the date of next hearing to be prepared to provide

testimony regarding the problems identified therein." The Court then stated in footnote 5 to

that Order that:

> The purpose of the hearing is twofold:  (1) to address the
> Objection to HSBC's claim and (2) to investigate the practices
> employed in this case by HSBC and its attorneys and agents and
> consider whether sanctions should issue against HSBC, its
> attorneys and agents.  The parties are encouraged to resolve the
> Objection prior to the hearing.  However, the hearing will be held
> for the second purpose notwithstanding any settlement of the
> claim objection.

Rule 9011(c)(1)(B) provides, in relevant part, as follows:

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

. . .

(B) *On Courts Initiative.* On its own initiative, the court may enter an order **describing the specific conduct that appears to violate subdivision (b)** and directing an attorney, law firm, or party to show why it has not violated subdivision (b) with respect thereto.

As a sanctions provision, the procedure set forth in Rule 9011 must be strictly applied.

*In re Caskie-Johnson,* 2007 WL 496675 (D. Col. 2007) (at *3) (applying Rule 9011(c)(1)(A).

Where, as here, the sanctions emanate <u>not</u> from a motion under Rule 9011(c)(1)(A), but *sua*

*sponte* by the Bankruptcy Judge under Rule 9011(c)(1)(B), there are significantly more

stringent standards applied to the imposition of standards, since there is no "safe harbor"

protections as when the sanctions are a result of a motion.  *See, MHC Inv. Co. v. Reacom*

*Corp.*, 323 F.3d 620, 623 (8th Cir. 2003) ("[The Rule 11] standard is applied with particular

strictness where, as here, the sanctions are imposed on the court's own motion.").[6]  In *Kaplan v.*

*Daimerchysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003), the 11th Circuit cited the drafters'

comments to limit the use of court imposed Rule 11 sanctions:

Because no 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court – initiated proceeding, Rule 11's drafters commented on Rule 11 (c)(1)(B)'s compensating protections.  The initiating court must employ (1) a

---

[6] Rule 11 is identical to the Bankruptcy Rule 9011 and the caselaw interpreting the two rules is interchangeable. *Caskie-Johnson, supra.*

> "show cause" order to provide notice and an opportunity to be
> heard; and (2) a higher standard ("akin to contempt") than in the
> case of party initiated sanctions.

*Id.* at 1255, citing, *in re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (Court must

demonstrate "subjective bad faith" to justify sanctions under Rule 11 (c)(1)(B)).

Regrettably, the Bankruptcy Court greatly deviated from the strict dictates of Rule

9011(c)(1)(B) in its June 9th Order and the subsequent proceedings. No Order to Show Cause

was issued. The **only** issued raised with respect to the Udren Firm in the Order were (1)

pressing a relief motion on admissions that were known to be untrue and (2) signing and filing

(unspecified) pleadings without knowledge or inquiry regarding the matters pled therein. June

9th Order at fn. 1. The Order also requested testimony on David Fitzgibbon, Esquire's assertion

that he had requested an accounting but was unable to communicate with his client - -

something that did not emanate from a pleading. *Id.*

The proceedings morphed into a wide ranging interdistrict investigation by the U.S.

Trustee as to the practices and procedures of LPS. Only a relatively minor percentage of the

proceedings dealt with the Udren Law Firm, at which time it was forced to present testimony

not knowing the precise charges that were asserted against them with the exception of the

accuracy of their two pleadings and an explanation of their young associate's panicked

response to Judge Sigmund's stern cross-examination when the Debtors counsel made the false

assertion that she had requested a complete accounting of the Taylor's mortgage and it had not

been provided.[7] Counsel for the Appellants repeatedly expressed frustration at the generality of

---

[7] The record undisputedly indicated that the only time she requested any accounting was by mail in her April 23rd letter - - and the only accounting sought was for a post-petition accounting of flood insurance charges. That was indeed provided to her.

the charges set forth in the June 9th Order, to no avail. Nonetheless, the Udren Firm, Mr. Udren, Ms. Doyle and Mr. Fitzgibbons demonstrated without any refutation whatsoever that: (1) the allegations set forth in the January 15, 2008 Motion for Relief From Stay were **literally** true at the time they were made in that the debtors were three months in arrears with a suspense balance of $1,040.18 (*see* Exhibit D-1 (Exhibit "A" hereto)); and (2) the response to the claim objection was **literally** true in that the objection only focused on the flood insurance (see Item 8) and alleged that the debtors home was not in a flood plain (which it was) and the reply denied these allegations and stated that the figures contained in the Proof of Claim accurately reflect actual sums expended or costs incurred by the mortgagee prior to the date of the debtors bankruptcy filing. The Court made <u>no</u> findings that the Udren Law Firm, or any of its attorneys acted in "subjective bad faith" or in a manner "akin to contempt." Rather, the Court improperly applied the Rule 9011(c)(1)(A) standard, which is inapplicable here, and then applied it incorrectly. That procedure violates Rule 9011(c)(1)(B)'s stringent standards as well as the Appellant's Due Process right to be fully aware of the precise charges against them and given an opportunity to contest them based on the appropriate legal standard. The sanctions must therefore be vacated for that reason alone.

## II.  **THE UDREN FIRM DID NOTHING WRONG**

The Order of the Court of April 15, 2009 concerning the debtors counsel made it clear

that the debtors counsel was responsible for **all** of the problems with respect to the relief motion

and objection to claim:

> Hamer [debtors counsel] failed to answer admissions filed in
> support of HSBC's motion for relief from stay (the "stay
> motion"); she filed two answers to the stay motion, both
> untimely, and both containing erroneous averments (**including
> that payments have been made that have not been sent**).
> Hamer's lack of clarity about the need for a full loan history
> contributed to the confusion in this case. As I stated in the
> contemporaneously released opinion addressing my June 9, 2008
> Order to Show Cause, a more competent lawyer than Hamer
> might have been able to navigate the HSBC/Udren automated
> responses to her client's claims and saved everyone a lot of time
> and expense.

April 15, 2009 Order at p. 2, fn. 4.

Thus, as the Court conceded <u>in its own Order</u>, the only "objection" that the Court had to

the Udren Firm's pleadings were that they were "automated." Nothing in the June 9th Order

specified that "automation" of pleadings was at issue, nor is "automation" of pleadings an

offense under Rule 9011. More importantly, <u>nothing</u> in the pleadings was false. Instead, it was

Debtor's counsel's pleadings that were false - - and <u>no</u> sanctions were imposed against her.

The Court's ambiguous June 9th Order directly led to a procedure whereby the Court

was frustrated and the parties were frustrated because there was no clear direction as to the

alleged sanctionable conduct so that the testimony became circular. At the end of the day,

when the Bankruptcy Court justified the sanctions by stating that the stay motion was a "mostly

boilerplate document" (April 15, 2009 Opinion at p. 13), the Court completely misinterpreted

both the payment history and the status once the adjourned hearing finally was held on May 1,

2009 so as to make the completely erroneous statement that "The stay motion filed on January 15 also included the January payment which by the time of the <u>continued hearing</u> had been paid. Thus at the time the stay motion **was filed**, the debtors were short $360.00 for payments more than sixty days overdue, a fact not clear from the canned pleading prepared by a paralegal from Newtrak Screens."

April 15th Opinion at p. 14.

Aside from the fact that the accounting of payments contained in the January 15th motion for relief was nowhere identified as a basis for sanctions in the June 9th Order, **the undisputed fact is that this conclusion was false.** As noted above, the payment history is as follows:

After the September, 2007 filing, an October payment was made, but was short based on the flood insurance charges which debtors' own schedules conceded were due and the Bankruptcy Court determined were proper given the FEMA flood plain map. The November payment was paid late, **and no December payment was made at all.** Still, only when the January payment had not been received by January 15th was the motion for relief filed. Thus, on January 15, 2008, the Motion for Relief alleged Debtors were three months delinquent with a $1,000 suspense account. <u>See,</u> Exhibit "B" hereto (post-petition payment history identified as Exhibit D-1). This was <u>literally</u> accurate. The Court's statement that there was no delinquency at the time of the filing of the motion for relief is not based on any facts whatsoever, nor was it ever identified as a potential issue in the Court's June 9, 2009 Order.

What actually occurred, as noted by the Court, is that the debtors' counsel first filed a false answer to the motion stating that payments had been paid but rejected. The debtors

counsel then filed an Amended Answer stating that five payments had been made.  The Udren

law firm, in good faith, requested an accounting, **which it received and showed that the last**

**two payments had never been made such that as of March, 2009, only four post-petition**

**payments had been made and thus, the debtors still were two months behind post-**

**petition.**  The debtors' filing thereof was a facial violation of Rule 9011 in that counsel for the

debtors affirmatively represented to the Court that two checks attached to the answer to the

motion had been made, when in fact, they still were in the possession of debtors counsel.  As

the Court later stated:

> Moreover, the copies (of the checks attached to the answer to the
> motion for relief) were missing the backs of those checks **the**
> **reason being apparent on April 23rd when Hamer forwarded**
> **the actual checks for the February and March payments to**
> **Jennifer Hiller, an Udren Firm employee in the Sheriff's Sale**
> **(v. bankruptcy) Department.**

April 15th Opinion at p. 15.

Accordingly, notwithstanding the Court's own conclusion that debtors' were in fact,

consistently two months behind on their post-petition payments, and that debtors' counsel had

repeatedly misrepresented the status of payments to the Court, somehow Udren and its

attorneys were liable for Rule 9011 sanctions.  This is a manifest injustice.  **The Udren Firm**

**did nothing wrong.**  The Debtors' counsel did.

Indeed, when David Fitzgibbons, a young associate from the Udren Firm, appeared in

Court on May 1, 2009, he honestly related to the Court that he had just learned that payments

had been received for the missing months and the only basis for going forward on the motion

for relief was to decide the flood insurance issue - - which was before the Court on the

objection to claim in any event.  While the Court was unhappy at his use of unanswered

Requests for Admission, Mr. Fitzgibbon did nothing improper.  It is indeed true that Mr. Fitzgibbons proffered the requests for admission, which were unanswered and therefore deemed admitted.  However, he **never** attempted to utilize them for the purpose of asserting that the debtors had not made the payments **which he conceded in open Court at that time had been received** (albeit they had not cleared).  Rather, he utilized those admission for the purpose of proving his *prima facie* case on 11 U.S.C. §362(d)(2), in that the debtors had admitted that there was no equity in the property and that the property was not necessary to an effective reorganization.  There is nothing wrong about the utilization of requests for admission in this matter and, had the debtors' counsel done her job (assuming that there was equity in the property) and denied that averment, it would have been HSBC's burden to prove the lack of equity in the property.

The above recited Statement of Facts is essential, not only to show that the Court made clear errors of law, which are discussed further below, but that the issues which were discussed in the five days of hearings were never stated as issues to be resolved in the Court's June 9th Order.  Had the Court put in its Order that the Udren Firm needed to show cause why it filed its motion for relief from stay notwithstanding the fact that the debtors were current (which they were not), or that the Udren Firm's associate (and by the terms of Rule 9011, the firm itself) pressed a motion for relief although the arrearage had been cured, this entire hearing would have taken no more than one hour.  Instead, what occurred is that both the Court's and U.S. Trustee's focus was on LPS and Moss Codillis, which had provided the information upon which the Udren Firm (reasonably) relied and which had filed the Proof of Claim and when no

substantial evidence of wrongdoing was found against those parties, the inquiry somehow came back to focus on Udren.

Not only did the June 9th Order contain **no** specific charges required by Rule 9011(c)((1)(B), <u>there were no allegations at all concerning the activities of Ms. Doyle and Mr. Udren</u> in the Court's June 9th Order. The record is completely absent of any findings of subjective bad faith or behavior "akin to contempt," which is required to impose sanctions under Rule 9011 in a court-initiated motion. Simply stated, the Udren Firm, Mark J. Udren, Esquire and Lorraine Doyle, Esquire did nothing wrong and certainly nothing which could conceivably result in the imposition of sanctions under the stringent standards applicable to a Rule 9011(c)(1)(B) motion.

### III.    THERE WAS NO BASIS WHATSOEVER FOR IMPOSITION OF VICARIOUS LIABILITY AGAINST MARK J. UDREN, ESQUIRE OR LORRAINE DOYLE, ESQUIRE

Since the record indisputably shows that there was nothing inaccurate at the time the motion for relief from stay was filed or the response to objection to claim, the **only** act which could even conceivably justify imposition of sanctions was Mr. Fitzgibbon's decision to press the relief from stay motion when cure payments had been received (albeit not yet paid) and his representation to the Court that he was unable to obtain an accounting from HSBC - - a statement which he later conceded to have been untrue and made out of panic.  It is instrumental here to note that the bankruptcy court did not see fit to impose sanctions against Mr. Fitzgibbon.  Rather, they were imposed against Ms. Doyle, Mr. Udren and the Udren Law Firm.

As a matter of law, vicarious liability under Rule 9011 cannot be imposed against anyone other than the allegedly offending attorney and the law firm - - there is no legal basis whatsoever to impose sanctions against Mr. Udren or Ms. Doyle for any of the actions or statements made by Mr. Fitzgibbon.  *See*, Rule 9011(c) (sanctions may be imposed against the attorney, law firm or parties that violated Rule 9011).  Since Mr. Udren was not accused of **any** Rule 9011 violations, the requirement that he conduct and participate in a firm wide seminar on Newtrak as a sanction must be vacated.[8]  Similarly, Ms. Doyle is responsible for two and only two actions in these proceedings - - the filing of the Motion for Relief From Stay and the

---

[8] It should be noted that the Udren Law Firm is arranging a seminar for its personnel, including Mr. Udren, so that all personnel are familiar with the procedures for using Newtrak.  However, to require this is as a sanction, as noted by the Bankruptcy Court in granting the Motion for Relief for a Stay Pending Appeal, may have effects threatening the Udren Law Firm's ability to obtain government contract work.  There is no justification for the imposition of any sanction against the firm or Mr. Udren based on the evidence in the proceedings below.

response to the Objection to Claim. She was not present at the stay hearing on May 1st and cannot be held vicariously liable for anything that occurred on that day. With respect to the two pleadings she signed, they are literally and indisputably true. Not a single fact in either pleading was false nor was there presented any evidence of subjected bad faith or other behavior akin to contempt. It was a manifest injustice that Ms. Doyle not only receive sanctions, but those sanctions were in the nature of an ethical violation - - requiring her to take additional CLE credits.

Both the standard applied by the court, the procedures utilized by the court and the factual findings in the April 15th Opinion and Order were clearly erroneous and an abuse of discretion. It is respectfully submitted that the Order, as it applied to the Udren Law Firm, be reversed in all respects.

## CONCLUSION

For all the reasons set forth herein, it is respectfully submitted that the Opinion and Order dated April 15, 2008 should be reversed and/or vacated as to the Appellants.

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

Date:  June 17, 2009                    BY:    /s/ Daniel S. Bernheim, 3d
                                               Daniel S. Bernheim, 3d, Esquire
                                               Jonathan J. Bart, Esquire
                                               Dashika R. Wellington, Esquire
                                               Attorneys for Appellants