No. 09-2479

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA
————————————————

In re NILES C. TAYLOR AND ANGELA J. TAYLOR,

Debtors.

————————————————

## THE UDREN LAW FIRM, MARK J. UDREN, ESQ.,
### AND LORRAINE DOYLE, ESQ.

Appellants,

v.

ROBERTA A. DeANGELIS, Acting United States Trustee for Region 3

Appellee.

————————————————

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA
————————————————

## BRIEF FOR APPELLEE, ROBERTA A. DeANGELIS,
### ACTING UNITED STATES TRUSTEE

Ramona D. Elliott
General Counsel
P. Matthew Sutko
Associate General Counsel
John P. Sheahan
Department of Justice
Executive Office for U.S. Trustees
20 Massachusetts Ave, N.W.
Washington, DC  20530
(202) 307-1399

Frederic J. Baker
Senior Assistant United States Trustee
Robert J. Schneider
George M. Conway
Department of Justice
Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 597-4411

**Attorneys for Appellee Roberta A.
DeAngelis, Acting United States Trustee**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF APPROPRIATE STANDARD
OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.      The Procedure Used by the Bankruptcy Court Was Consistent With
        Rule 9011(c)(1)(B), and Does Not Constitute Reversible Error . . . . . . . . . . . . . . . . 15

II.     The Bankruptcy Court Did Not Err in Sanctioning Ms. Doyle Under Rule 9011
        for Her Failure to Conduct a Reasonable Inquiry Before Signing and Filing
        Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    The Bankruptcy Court Did Not Err in Sanctioning the Udren Firm in Light
        of Ms. Doyle's Violations of Rule 9011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**Cases**

Page

*Brubaker Kitchens, Inc. v. Brown*, 2006 WL 3682180 (E.D. Pa. Dec. 11, 2006) . . . . . . . . . . .  23

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 18, 19

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Fellheimer, Eichen & Braverman P.C. v. Charter Techs., Inc.*,
57 F.3d 1215 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 17, 20

*First Nat'l Bank of Lincolnwood v. Levine (In re Evanston Motor Co.)*,
735 F.2d 1029 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . .  16, 23, 24

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . .  17

*In re Kunstler*, 914 F.2d 505 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*In re Rivera*, 342 B.R. 435 (Bankr. D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

*In re Ulmer*, 363 B.R. 777 (Bankr. D.S.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

*Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007) . . . . . . . . . . . . . . .  18

*Kaplan v. Daimlerchrysler, A.G.*, 331 F.3d 1251 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . .  17

*Landon v. Hunt*, 977 F.2d 829 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1990) . . . . . . . . . . . .  23

*United States v. Carey*, 120 F.3d 509 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

**TABLE OF AUTHORITIES** (continued)

**Cases**

Page

*U.S. Nat'l Bank Ass'n v. Sullivan-Moore*, 406 F.3d 465 (7th Cir. 2005) . . . . . . . . . . . . . . . .  28

*Vista Mfg. Inc. v. Trac-4 Inc.*, 131 F.R.D. 134 (N.D. Ind. 1990) . . . . . . . . . . . . . . . . . . . . . .  16

*Young v. City of Providence*, 404 F.3d 33 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**Statutes**

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

11 U.S.C. § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

28 U.S.C. § 157(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**Federal Rules**

Fed. R. Bankr. P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. Bankr. P. 5005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Fed. R. Bankr. P. 7036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Fed. R. Bankr. P. 8002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed. R. Bankr. P. 9011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other Authorities**

Standing Order M03-3005, Provisions for Electronic Case Filing . . . . . . . . . . . . . . . . . . . . .  3, 5

1997 Advisory Committee Note to Fed. R. Bankr. P. 9011 . . . . . . . . . . . . . . . . . . . . . . . . . .  27

1993 Advisory Committee Note to Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . .  17, 25, 29

## STATEMENT OF JURISDICTION

The bankruptcy court had jurisdiction over this chapter 13 proceeding under 28 U.S.C. § 157(a). The sanctions order below is a final collateral order over which this Court has jurisdiction under 28 U.S.C. § 158(a)(1). *See Martin v. Brown*, 63 F.3d 1252, 1258 (3d Cir. 1995). The bankruptcy court entered its sanctions order pursuant to Fed. R. Bankr. P. 9011 on April 15, 2009, and the appellants' appeal from this order is timely under 11 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002(a).

## STATEMENT OF APPROPRIATE STANDARD OF APPELLATE REVIEW

The bankruptcy court's legal findings are reviewed *de novo*, and its factual findings are reviewed for clear error. *Fellheimer, Eichen & Braverman P.C. v. Charter Techs., Inc*., 57 F.3d 1215, 1223 (3d Cir. 1995). The bankruptcy court's findings of fact will not be set aside unless they are either "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[ ] no rational relationship to the supportive evidentiary data." *Id*.; *see also* Fed. R. Bankr. P. 8013 ("[F]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

Sanctions imposed under Fed. R. Bankr. P. 9011 ("Rule 9011"), which is the bankruptcy counterpart of Fed. R. Civ. P. 11 ("Rule 11"), are reviewed using an abuse of discretion standard, because the trial court "is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990).

1

## STATEMENT OF THE CASE

Lorraine Gazzara Doyle is an attorney employed by the Udren Law Offices P.C. (the "Udren Firm"). In the chapter 13 bankruptcy case of Niles and Angela Taylor, Ms. Doyle filed a motion for relief from the automatic stay on behalf of the Taylors' mortgage lender, and also filed a reply to the Taylors' objection to the lenders' proof of claim. Ms. Doyle failed to conduct a reasonable inquiry under Rule 9011(b) before filing these pleadings. As a result, following four evidentiary hearings, the bankruptcy court issued an order on April 15, 2009, imposing remedial non-monetary sanctions under Rule 9011(c) against Ms. Doyle and the Udren Firm. Ms. Doyle, the Udren Firm, and Mark J. Udren have timely appealed this order.

## STATEMENT OF FACTS

On September 16, 2007, the Taylors filed a voluntary joint petition under chapter 13 of title 11, United States Code. D.I. 1.[1] The Taylors and their three children resided in a home that the schedules filed in support of their petition valued at $190,000, subject to a $103,000 mortgage held by HSBC Mortgage Corporation (USA) ("HSBC"). *Id.*

On October 9, 2007, Maria Borreson, an attorney employed by the Denver, Colorado law firm Moss Codillis, L.L.P. ("Moss Codillis"), filed a proof of claim ("Proof of Claim") pursuant to 11 U.S.C. § 501 as authorized agent for HSBC. *See* Claims Register for Case No. 07-15385, Claim 8-1. The Proof of Claim represented that HSBC held a secured claim of $93,256.29 against the Taylors' home, and it listed that same amount as the value of the Taylors' home. *Id.* HSBC attached an exhibit to its Proof of Claim stating that, beginning October 1, 2007, the Taylors' monthly

---

[1]Citations to items on the electronic docket of the bankruptcy case below are indicated as "D.I. [docket item number]."

2

payment was $1,264.02. *Id*. Through an apparent error, the Proof of Claim included as an attachment a copy of a note unrelated to the Taylors or their property.[2] *Id.*

On January 15, 2008, a motion for relief from the automatic stay ("Motion for Stay Relief") was filed on behalf of HSBC by Ms. Doyle.[3] D.I. 18. Granting such a motion permits secured creditors to foreclose on property held by the debtor. *See* 11 U.S.C. § 362.

HSBC's Motion for Stay Relief stated that the Taylors had "failed to make the current monthly payments" since the filing of their petition, and alleged three missed payments of $1,455.83 per month, totaling $4,367.49. *Id.* The Motion for Stay Relief did not acknowledge having received any payments from the Taylors after the filing of their petition. *Id.* The Motion for Stay Relief alleged that the Taylors owed a balance of $4,302 in post-petition monthly payments and late charges. *Id.* The Motion for Stay Relief also represented that "Debtor(s) has/have inconsequential or no equity in the premises[.]" *Id*.

Ms. Doyle, representing HSBC, served the Taylors on January 15, 2008, with a request for admissions pursuant to Fed. R. Bankr. P. 7036 ("Request for Admissions"), which sought to have

---

[2]The Proof of Claim contained several errors, as HSBC acknowledged by filing two amendments. The first amendment, filed on May 12, 2008, by Ms. Borreson of Moss Codillis, contained only the proof of claim (Official Form 10) and one exhibit; the proof of claim provided no value for the Taylors' home, and the exhibit stated that as of October 1, 2007, the Taylors' monthly payment was $1,455.83. *See* Claims Register for Case No. 07-15385, Claim 8-2. The second amendment, filed on July 7, 2008, by HSBC Vice President Kimberly Graves, made numerous additions and corrections, including but not limited to the following: reducing HSBC's claim to $92,298.98; stating that the Taylors' home had a value of $190,000; and attaching a Note evincing the Taylors' obligation to Hart Mortgage Corp., the original lender in 1992. *See* Claims Register for Case No. 07-15385, Claim 8-3.

[3]The Motion for Stay Relief contained the signature line "/s/ Lorraine Gazzara Doyle," which establishes that the document was electronically filed by Ms. Doyle for purposes of Rule 9011 pursuant to the bankruptcy court's Standing Order M03-3005, Provisions for Electronic Case Filing.

the Taylors admit that they owed $4,302 in post-petition monthly payments and late charges, that they had not made payments to the chapter 13 trustee under their repayment plan, and that they had inconsequential or no equity in their home.  D.I. 20.

On February 4, 2008, the Taylors filed an objection to the Motion for Stay Relief, and on March 17, 2008, the Taylors filed an objection to the Proof of Claim.  D.I. 22, 31.  Among other contentions, the Taylors stated that the amount claimed as due by HSBC was inaccurate because HSBC was improperly charging the Taylors for flood insurance.  D.I. 31.[4]

On March 19, 2008, the Taylors' counsel filed an amended objection to the Motion for Stay Relief.  D.I. 33.  The amended objection attached six checks payable by the Taylors to HSBC in the amount of $1,277.12.  *Id*.  The Taylors alleged those checks constituted payments for October 2007 through December 2008.  *Id*.  For the October 2007 through January 2008 payments, both the front and back of the checks were provided, indicating that HSBC had received the payments as of March 19, 2008.  *Id*.  The February 2008 payment was dated March 8, 2008, and the March 2008 payment was dated March 17, 2008; only the front of those checks was provided, indicating that HSBC had not yet received these payments as of March 19, 2008.  *Id.*

---

[4] The Taylors' proof of claim objection alleged that the Taylors did not require flood insurance as they did not actually reside in a flood zone.  The Taylors accordingly asked the bankruptcy court to order HSBC to (i) provide an accounting, (ii) cease and desist from charging the Taylors additional unnecessary flood insurance premiums, and (iii) credit the Taylors the portion of their past payments that had been applied to unnecessary flood insurance premiums. D.I. 31.  As of July 15, 2008, their home was removed from the flood zone.  *See* D.I. 65 (Transcript of July 23, 2008, hearing) at 34:3-4.  HSBC subsequently credited some flood insurance premiums and late fees to the Taylors' account.  *Id*. at 36:13-18.

Ms. Doyle filed a reply to the objection to the Proof of Claim on March 27, 2008 ("Reply to Proof of Claim Objection").[5]  D.I. 36.  The Reply to Proof of Claim Objection stated that "[a]ll figures contained in the proof of claim accurately reflect actual sums expended or costs incurred by Mortgagee prior to the date of the Debtors' bankruptcy filing and/or charges to which Mortgagee is contractually entitled and which the Debtors are contractually obligated to pay."  *Id.*

On May 1, 2008, a hearing was held on the Motion for Stay Relief and the objection to the Proof of Claim.  D.I. 54 (Transcript of May 1, 2008, Hearing).  David Fitzgibbon, an Udren Firm associate who argued Ms. Doyle's Motion for Stay Relief at the hearing, acknowledged that HSBC had indeed received the Taylors' October and November payments as of the date the Motion for Stay Relief was filed.  *Id.* at 7:6-14.  As the payments did not include the disputed flood insurance premium, however, they were "put in suspense."  *Id*. at 7:8, 11-12.  Mr. Fitzgibbon conceded that a portion of the November payment was taken from "suspense" to make whole the allegedly deficient October payment, and the remaining $1,040.18 from the November payment was held "in suspense" until the Taylors made additional payments from which funds could be applied to make the allegedly deficient November payment whole.  *Id.* at 7:12-17.

The only evidence presented in support of the Motion for Stay Relief was the Request for Admissions, which had not been answered by the Taylors.  *Id*. at 9:5-16.  The bankruptcy court, however, realized that by February 15, 2008 – i.e., the date answers to the Request for Admissions were due – HSBC had received the December and January payments (albeit minus the disputed flood insurance premium).  *Id*. at 35:17-19.  As a result, the bankruptcy court found that the

---

[5]The Reply to Proof of Claim Objection contained the signature line "/s/ Lorraine Gazzara Doyle," which indicates that the document was electronically filed by Ms. Doyle for purposes of Rule 9011 pursuant to the bankruptcy court's Standing Order M03-3005, Provisions for Electronic Case Filing.

admissions relied upon by the Udren Firm were "not accurate" as of the date of the hearing, yet "[the Udren Firm] had that evidence in your possession and you went ahead like you never saw it."[6]  *Id*. at 35:10, 36:3-4; 42:2-3.

The bankruptcy court denied the Motion for Stay Relief as "questionably in bad faith."  *Id*. at 41:17-19, 45:21-22.  In addition, the bankruptcy court directed Mr. Fitzgibbon to "pass it up the line that I was not pleased with this motion for relief," but that the court was "cutting them a break this time."  *Id*. at 45:16-17, 45:20-21.  An order was entered denying the Motion for Stay Relief "for reasons stated on the record."  D.I. 49.

As for the Proof of Claim – which addressed only the pre-petition amount owed by the Taylors to HSBC – the hearing on the Taylors' objection was adjourned to June 5, 2008, and the Udren Firm was directed to obtain an accounting from HSBC of its handling of the Taylors' pre-petition payments to determine the amount of the Taylors' arrearage.[7]  D.I. 54 at 43:13 through 45:12.

At the June 5, 2008 hearing, which took place on the return date of the Taylors' objection to the Proof of Claim, Mr. Fitzgibbon stated that he had requested an accounting, but that HSBC had

---

[6]In addition to the monthly payment information, the other "admissions" requested by the Udren Firm were apparently also false, as the Taylors were making payments to the trustee and had equity in their home.  *See* D.I. 54 (Transcript of May 1, 2008, Hearing) at 46:10-11 (Court: "And [Mrs. Taylor]'s making current payments?"  Chapter 13 Trustee's Counsel: "She is, Your Honor.");  Claims Register for Case No. 07-15385, Claim 8-3 (amended proof of claim acknowledging $190,000 as value of the Taylors' home).

[7]Confirmation of the Taylors' repayment plan was also continued to June 5, 2008.  D.I. 46.  This was apparently because the Taylors' proposed plan payments would not cover the arrearage claimed in the Proof of Claim; thus, the pre-petition accounting to be provided by HSBC, which would determine the Taylors' actual arrearage, was necessary to determine plan feasibility.  D.I. 54 at 43:25 through 44:7 (underfunding of claimed arrearage); 46:7-8 (confirmation was among the matters adjourned to June 5, 2008).

not yet provided it. D.I. 55 (Transcript of June 5, 2008, Hearing) at 5:5-6. He informed the court

that the Udren Firm uses "a program called NewTrak to communicate with them," and he had made

a NewTrak inquiry but had yet to receive a response. *Id*. at 8:10-17. Mr. Fitzgibbon also stated that

he had no way to contact his client other than by making an electronic inquiry through the NewTrak

system. *Id*. at 9:1-4. Mr. Fitzgibbon further stated that, because Moss Codillis, HSBC's national

counsel, had filed the Proof of Claim, the Udren Firm did not have the NewTrak "screen prints" used

to prepare the Proof of Claim. *Id*. at 8:12-14, 9:9. The bankruptcy court stated that it would enter

an order directing Moss Codillis "and anybody who had anything to do with it" to appear and testify

so that the court could "find out what the debtor [sic] owes." *Id*. at 21:16-24. The bankruptcy court

also advised Mr. Fitzgibbon that it was "issuing an order to show cause on [the Udren Firm], too,

for filing these things with – without having any knowledge. . . [a]nd filing answers that – without

any knowledge." *Id*. at 22:3-6.

Thereafter, on June 9, 2008, the bankruptcy court entered an order that required specified

persons to appear and provide testimony regarding whether sanctions should be imposed given the

"questionable practices" identified at the May 1, 2008, and June 5, 2008, hearings. D.I. 52. The

questionable practices regarding which the court sought testimony included "pressing a relief motion

on admissions that were known to be untrue, and signing and filing pleadings without knowledge

or inquiry regarding the matters pled therein." *Id*. n.1. The specific persons directed to appear and

provide testimony included, among others, Mr. Fitzgibbon, Ms. Doyle, and "[t]he partner in charge

of HSBC's bankruptcy work" at the Udren Firm. *Id*. In appearing to testify regarding their

questionable practices, the specified Udren Firm attorneys were advised that the purpose of the

hearing included "to investigate the practices employed in this case by HSBC and its attorneys and

7

agents **and consider whether sanctions should issue against HSBC, its attorneys and agents**."[8]

*Id*. n.5 (emphasis added).

The resulting investigation took place over four evidentiary hearings at which a number of witnesses from HSBC, Moss Codillis, and the Udren Firm testified. *See* D.I. 65 (Transcript of July 23, 2008, Hearing); D.I. 70 (Transcript of August 8, 2008, Hearing); D.I. 122 (Transcript of October 23, 2008, Hearing); D.I. 169 (Transcript of December 17, 2008, Hearing).

At the beginning of the first of these hearings, on July 23, 2008, the bankruptcy court stated, "as a prefatory matter" to clarify "what [its] concerns were," the following:

> [E]very Proof of Claim objection needs to be defended in good faith. We have a situation here where one person is filing the Proof of Claim, another one is defending. I have a question about access to client files, access to information, the communication and so forth. **Related to that is the Rule 11 obligation**; there must be a colorable basis for a claim **after due inquiry**. Again, that comes back to the reference to data and information, the review of filings that are made with the client, discovery duties.

D.I. 65 at 8:25, 9:1, 9:14-22 (emphasis added). Similarly, at the second evidentiary hearing on August 8, 2008, the bankruptcy court stated as follows during Mr. Fitzgibbons' direct testimony:

> I'm not trying to elicit whether [the Udren Firm was] correct in [the] motion for relief or correct in [the] objection to claim. But what I'm trying to elicit is what do creditors do in preparation for filing these motions to ensure that they are – and **what did they look at? . . . . What did they verify?**

---

[8]The bankruptcy court's June 9, 2008, order also invited the Office of the United States Trustee to participate, and the Office of the United States Trustee began its own investigation into the practices of Moss Codillis and HSBC's loan servicer in this case, Lender Processing Services, Inc., f/k/a Fidelity National Information Services, Inc. ("LPS"), creator of NewTrak. The Office of the United States Trustee's investigation is ongoing.

D.I. 70 at 35:9-16 (emphasis added). Members of the Udren Firm, including Ms. Doyle, were present at both of these hearings. D.I. 65 at 1-2 (appearances at July 23, 2008, hearing); D.I. 70 at 1 (appearances at August 8, 2008, hearing).

During the course of the evidentiary hearings, the following relevant testimony was elicited regarding NewTrak and the documents filed in the Taylors' case:

HSBC's case management system, which is used to track payments received from borrowers such as the Taylors, can be accessed by its national counsel, Moss Codillis, but cannot be accessed by local counsel such as the Udren Firm. D.I. 65 at 67:13-14. Local counsel only have access to NewTrak, which is simply a communication tool provided by LPS through which a case can be electronically referred to local counsel and local counsel can communicate with HSBC and LPS. *Id*. at 68:22-23; 73:5-6, 16-19; 74:24-25; 172:17-24. When a stay relief motion is desired, NewTrak "provid[es] the attorney with minimal – the minimal information that they would need to file" the motion. *Id*. at 78:5-7 (testimony of HSBC Vice President Kimberly Graves). If communication through NewTrak is not sufficient or a timely response is not received, HSBC has an "escalation procedure" whereby local counsel can communicate directly with HSBC personnel. D.I. 65 at 109:14-25; 110:1-4; 114:25; 115:1-4. Notwithstanding this escalation procedure, however, the Udren Firm instructs its employees to communicate through NewTrak. D.I. 169 at 79:22-23.

Mark J. Udren is the Udren Firm's president and sole shareholder. D.I. 122 at 90:13-15. Mr. Udren has been a practicing attorney for many years. *Id.* at 90:5-6. He testified that because "time frames . . . drive[ ] the clients," his firm is "time frame driven." *Id*. at 124:22-23, 125:6. As a result, Mr. Udren strives to be the "fastest attorney" in relation to others to whom a servicer might refer business. *Id*. at 125:7. Given this perceived need to quickly turn around matters such as motions

for stay relief, the Udren Firm "rel[ies] on [NewTrak] dramatically." *Id*. at 91:23-25. Despite its alleged importance to his firm's turnaround time, however, Mr. Udren acknowledged that he is not familiar with how NewTrak works, as it is "beyond [his] capabilities." *Id*. at 127:22-23.

In the Taylors' case, the Proof of Claim was prepared by a "processor" at Moss Codillis who is not legally trained. D.I. 65 at 137:20-21. Maria Borreson, the Moss Codillis attorney who signed and filed the Proof of Claim, did not actually review it before it was filed. *Id*. at 151:1-6. Although the Moss Codillis processors review HSBC's actual payment information in preparing proofs of claim, Ms. Borreson acknowledged that she does not know whether the information received from HSBC is accurate. *Id*. at 122:25; 123:1-3; 150:23. Indeed, Ms. Borreson acknowledged that the Proof of Claim in the Taylors' case had the wrong Note attached and also contained erroneous information regarding the monthly payment amount. *Id*. at 144:13-15.

Ms. Doyle, managing attorney of the Udren Firm, has been a practicing attorney for over 28 years. D.I. 169 at 5:15, 21. She acknowledged that, in preparing the Reply to Proof of Claim Objection, she simply relied on the erroneous and unreviewed Proof of Claim filed by Moss Codillis. D.I. 169 at 58:19-20. Although she reviewed the reply before it was filed in her name, she testified that she conducted no inquiry beyond reviewing the information received through NewTrak because that information "seemed accurate." *Id*. at 55:8-10; 57:4. Ms. Doyle presumed that the information on NewTrak had originated with HSBC and not the loan servicer, LPS, but she did not know and had not sought to verify the information because she "had no reason to disbelieve" it. *Id*. at 56:24, 57:3-5; 61:1-8.

Similarly, Ms. Doyle did nothing to verify the Taylors' payment history before signing and filing the Motion for Stay Relief, as her practice is to "rely on the allegations supplied by my client

or on behalf of my client." *Id*. at 30:14-17.  Instead, she merely reviewed hard copies of the "screen

prints" provided through NewTrak.  *Id*. at 7:17-18; 8:4, 8-9; 9:1; 31:11.  The Udren Firm processors

who prepared the motion had also relied solely on the "screen prints," as did Mr. Fitzgibbon in his

initial review.  D.I. 70 at 36:4-5; 36:19; 104:14; 120:21, 25; 121:4-5.  Ms. Doyle acknowledged that

she neither accessed NewTrak nor contacted HSBC to verify the accuracy of the information

contained in the "screen prints." D.I. 169 at 50:4; 39:8.  Indeed, Ms. Doyle did not know who had

put the information onto NewTrak; she "presume[d] it was somebody from [LPS]," the loan servicer,

and not HSBC, and she simply assumed that the information had been supplied to LPS by HSBC.

*Id*. at 31:5-23; 40:23, 41:1-7.  In addition, despite the explicit statement in the Motion for Stay Relief

regarding the Taylors' alleged lack of equity in their home, Ms. Doyle testified that she made

absolutely no inquiry into the veracity of that factual allegation.  *Id*. at 38:15-25, 39:1.

 After the completion of testimony, the parties submitted briefs regarding the issues raised

during the court's investigation resulting from the June 9, 2008, order.  D.I. 160 (submission filed

under seal on behalf of the Udren Firm in response to the Acting United States Trustee's

supplemental memorandum of law filed under seal on January 21, 2009, in support of her motion

to conduct an examination of LPS pursuant to Fed. R. Bankr. P. 2004).

 On April 15, 2009, the bankruptcy court issued an opinion in which it made findings based

on its investigation and issued non-monetary sanctions against Ms. Doyle and Mr. Udren.  D.I. 193.

The bankruptcy court found that "certain practices and procedures employed by HSBC, its agents

and attorneys . . . have created an environment where Rule 9011 duties have been subordinated to

efficiency and cost-savings so as to require sanctions."  *Id*., slip op. at 3.  The bankruptcy court

found that Mr. Fitzgibbon violated Rule 9011 by advocating the Motion for Stay Relief "on

admissions he knew to be then untrue." *Id.*, slip op. at 51.  The bankruptcy court also found that Ms. Doyle had violated Rule 9011 because she had "failed to observe her duty to make reasonable inquiry" regarding the Motion for Stay Relief and Reply to Proof of Claim Objection.  *Id.*, slip op. at 50-51.  The bankruptcy court also found that "the Udren Firm . . . is jointly responsible with [its attorneys] Doyle and Fitzgibbon for these breaches."  *Id.*, slip op. at 52.

The bankruptcy court did not impose a sanction upon Mr. Fitzgibbon because he was a young and inexperienced lawyer when he committed his Rule 9011 violation.  *Id.*  Ms. Doyle, however, was found to "be so enmeshed in the assembly line of managing the bankruptcy department's volume mortgage lender practice that she has lost sight of her duty to the court and has compromised her ethical obligations."  *Id.*  As a result, the bankruptcy court held that Ms. Doyle must take three continuing legal education credits in professional responsibility and ethics over and above any general continuing legal education obligation she already has.  *Id.*

As for the Udren Firm, "since policy emanates from the top" the bankruptcy court held that (i) Mr. Udren, who "sets the tone and establishes [the Udren Firm's] culture," must obtain training in NewTrak, (ii) Mr. Udren must spend one day observing his employees as they handle NewTrak referrals, and (iii) Mr. Udren and Ms. Doyle must "conduct a training session for all members of the [Udren Firm's] bankruptcy department in the appropriate use of [HSBC's] escalation procedure and the requirements of Rule 9011 with respect to pre-filing due diligence."  *Id.*, slip op. at 52-53.

12

The bankruptcy court entered an order embodying its decision on April 15, 2009.[9]  D.I. 194.
A timely notice of appeal was filed on April 27, 2009, by Ms. Doyle, Mr. Udren, and the Udren Firm
("Appellants").  D.I. 207.

## SUMMARY OF ARGUMENT

Every written paper presented to the bankruptcy court is subject to Rule 9011(b), which
imposes an affirmative duty on every attorney signing or filing a document to first conduct "an
inquiry reasonable after the circumstances" to ensure the validity of the factual and legal
assertions contained in the document.  To avoid sanction under Rule 9011(c), the attorney must
show not only that the document was accurate, but also that the pre-signing inquiry was
reasonable under the circumstances.  The applicable standard is an objective standard, not a
subjective, "akin to contempt" standard.

When a bankruptcy court seeks to impose Rule 9011(c) sanctions *sua sponte*, it must first
issue an order describing the specific conduct that appears to violate Rule 9011 and directing the
attorney or law firm to show cause why it has not violated Rule 9011(b).  The reason for this
requirement is to ensure due process.  Here, the bankruptcy court entered an order that ordered
the Udren Firm attorneys involved in this case to appear and testify, regarding specific conduct

---

[9]The April 15, 2009, order also directed HSBC to transmit to each all law firm it employs a letter
outlining HSBC's escalation procedure, explaining that HSBC is to be contacted directly when
necessary, and instructing the law firm to circulate among all attorneys in its bankruptcy
department a copy of the bankruptcy court's April 15, 2009, opinion.  D.I. 194.  This paragraph
of the April 15, 2009, order formed the basis of a motion for a stay pending appeal filed by the
Appellants on May 7, 2009, and granted on June 4, 2009.  D.I. 208 (motion for stay pending
appeal); D.I. 248 (order granting stay pending appeal).  As the HSBC portion of the order is not
addressed in the Appellants' Brief, however, they apparently no longer consider the directive to
HSBC to be a reversible "sanction" against the Udren Firm.  Moreover, the HSBC portion of the
order is not properly before this Court on appeal because HSBC, the party to whom it is directed,
has not appealed the April 15, 2009, order.

taken by Udren Firm attorneys, at a hearing at which sanctions would be considered.  At the outset of those hearings, moreover, the bankruptcy court specifically noted that the scope of its inquiry included consideration of possible Rule 9011 sanctions.  After four evidentiary hearings at which the Udren Firm attorneys testified, and after reviewing written submissions by the parties, the bankruptcy court issued an order finding that Mr. Fitzgibbon and Ms. Doyle had violated Rule 9011(b) and imposing nonmonetary sanctions on Ms. Doyle and the Udren Firm under Rule 9011(c).  The procedure used by the bankruptcy court provided sufficient due process, was not an abuse of discretion, and was, at most, harmless error.

The finding that Ms. Doyle had violated Rule 9011(b) was not an abuse of discretion, as her own testimony revealed that she did not conduct an inquiry reasonable under the circumstances before filing two documents with the bankruptcy court.  The bankruptcy court's sanction – that Ms. Doyle obtain three additional credits of continuing legal education in professional responsibility and ethics – was not an abuse of discretion.

As Ms. Doyle was properly found to have violated Rule 9011(b), the Udren Firm was also subject to sanction under Rule 9011(c).  The bankruptcy court's sanction – that Mr. Udren learn about the NewTrak system, observe his staff in its handling of NewTrak referrals for one day, and that Mr. Udren and Ms. Doyle conduct an in-house educational seminar regarding HSBC's escalation procedure and the due diligence requirements of Rule 9011 – was not an abuse of discretion.

14

# ARGUMENT

## I.    THE PROCEDURE USED BY THE BANKRUPTCY COURT WAS CONSISTENT WITH RULE 9011(c)(1)(B), AND DOES NOT CONSTITUTE REVERSIBLE ERROR

### A.    Ms. Doyle, Mr. Udren, and the Udren Firm Had Notice of the Conduct For Which Sanctions Were Imposed

Every written paper[10] presented to the bankruptcy court is subject to Rule 9011,

subsection (b) of which provides that, "[b]y presenting to the court (whether by signing, filing,

submitting, or later advocating) a . . . written motion, or other paper, an attorney . . . is certifying

that to the best of the [attorney]'s knowledge, information, and belief, *formed after an inquiry*

*reasonable under the circumstances*," the document is not presented for an improper purpose,

contains legal contentions warranted by existing law, contains factual contentions with

evidentiary support, and contains denials of factual contentions that are either warranted on the

evidence or reasonably based on a lack of information or belief.  Fed. R. Bankr. P. 9011(b)

(emphasis added).  Under Rule 9011(c), sanctions may be imposed "upon the attorneys, law

firms, or parties that have violated subdivision (b) or are responsible for the violation."

To avoid Rule 9011 sanctions, an attorney must not only show the legal and factual

validity of a document she signed and filed – she must also show that, before signing and filing

it, she conducted a reasonable inquiry.[11]   *Business Guides, Inc. v. Chromatic Commc'ns Enters.,*

*Inc.*, 498 U.S. 533, 551 (1991) (Rule 11 "states unambiguously that any signer must conduct a

---

[10]Pursuant to Fed. R. Bankr. P. 5005(a)(2), any document filed by electronic means constitutes a written paper for purposes of the Federal Rules of Bankruptcy Procedure, including Rule 9011.

[11]As Rule 9011 is the bankruptcy equivalent of Fed. R. Civ. P. 11, cases interpreting Rule 11 are used when necessary to analyze the propriety of sanctions under Rule 9011.  *See Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992).

'reasonable inquiry' or face sanctions"); *see also Vista Mfg. Inc. v. Trac-4 Inc.*, 131 F.R.D. 134, 138 (N.D. Ind. 1990) ("[A party] may not demonstrate compliance with Rule 11 by showing that it was right.  It must demonstrate compliance by showing that its pre-filing inquiry was reasonable.").  Failure to conduct a reasonable inquiry is sanctionable even if the pleading is factually and legally correct, as "a signer making an inadequate inquiry into the sufficiency of the facts and law underlying a document will not be saved from a Rule 11 sanction by the stroke of luck that the document happened to be justified."  *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994).

In this case, the bankruptcy court was concerned that the Motion for Stay Relief and Reply to Proof of Claim Objection were signed, filed, and later advocated without Udren Firm attorneys conducting an inquiry reasonable under the circumstances.  The bankruptcy court stated as much at the June 5, 2008, hearing, by telling Mr. Fitzgibbon "I'm issuing an order to show cause on your firm, too, for filing these things with – without having any knowledge.  And filing answers that – without any knowledge."  *See* D.I. 55 at 22:3-6.  In addition, the June 9, 2008, order expressly stated that the "questionable practices" to be investigated included "pressing a relief motion on admissions that were known to be untrue, and ***signing and filing pleadings without knowledge or inquiry regarding the matters pled therein.***"  D.I. 52 n.1 (emphasis added).  It is disingenuous for the Appellants to protest that they had no idea why the bankruptcy court was conducting its investigation.

In any case, the Appellants do not explain how placing a different title on the bankruptcy court's proceedings would have affected the substantive outcome of those proceedings, nor do they suggest that any part of the bankruptcy court's analysis would be different if the court was

forced to reconsider those same sanctions on remand under the rubric of Rule 9011. The Appellants do not contend they were confused about the subject matter of the bankruptcy court's investigation, and they do not suggest that their defense was affected by uncertainty over the statutory basis for sanctions. Accordingly, even if the bankruptcy court erred by not referencing Rule 9011 more explicitly in connection with its investigation of the Appellants, such error was harmless.

> **B.**   **The Bankruptcy Court Did Not Err By Looking To Objective Conduct, And Not Subjective Bad Faith, When Determining Whether Rule 9011 Sanctions Were Warranted**

The Third Circuit has held that "[t]he imposition of Rule 11 sanctions . . . requires only a showing of objectively unreasonable conduct," and does not require a showing of subjective bad faith. *Fellheimer, Eichen & Braverman P.C. v. Charter Techs., Inc.*, 57 F.3d at 1225 (awarding sanctions upon motion of opposing party). The Appellants nevertheless ask this Court to adopt a subjective, "akin to contempt" standard where the Rule 9011 action is brought by the court *sua sponte* rather than by a party on motion. Appellant's Brief at 18-19. This subjective standard, which has only been adopted by the Second Circuit (over a strong dissent),[12] is apparently based

---

[12]Other Circuits have acknowledged that the 1993 Advisory Committee Notes state that *sua sponte* Rule 11 motions will arise only in situations "akin to contempt," but not one has adopted the substantive, "bad faith" standard urged by the Appellants. *See, e.g.*, *Kaplan v. Daimlerchrysler, A.G.*, 331 F.3d 1251, 1255-56 (11th Cir. 2003) (agreeing with courts adopting "akin to contempt" rationale in *dicta*, but declining to adopt Second Circuit *mens rea* requirement); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151, 153 (4th Cir. 2002) (noting in *dicta* that courts are "obliged to use extra care in imposing [*sua sponte*] sanctions on offending lawyers" and noting the "Advisory Committee contemplated that a *sua sponte* show cause order would only be used 'in situations that are akin to a contempt of court,'" but nonetheless stating that the appropriate Rule 11 standard is one of objective reasonableness); *cf. MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623-24 (8th Cir. 2003) (stating that Rule 11 standard "is applied with particular strictness where, as here, the sanctions are imposed on the court's own motion," but affirming $25,000 sanction without finding subjective bad faith).

on the fact that Rule 9011(c)(1)(A) provides a 21-day "safe harbor" when the action is brought on motion, while Rule 9011(c)(1)(B) contains no "safe harbor" when the action is brought by the court *sua sponte*. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003).

Although the Third Circuit has not yet ruled on the issue, other courts have rejected the holding of *Pennie & Edmonds* and have not required proof of subjective bad faith where the sanctions proceeding is initiated by the court *sua sponte*. *See, e.g.*, *Jenkins v. Methodist Hosps. of Dallas, Inc*., 478 F.3d 255, 264 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 181 (2007); *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005). The Fifth Circuit found that, notwithstanding the procedural differences between actions brought *sua sponte* and those brought on motion, regardless of who initiates the inquiry "the party subject to sanctions is given the opportunity to show why they should not be imposed." *Jenkins v. Methodist Hosps. of Dallas, Inc*., 478 F.3d at 264. The First Circuit noted that the "akin to contempt" theory is based on a statement in the 1993 Advisory Committee Notes, but not on the actual text of Rule 11. *Young v. City of Providence*, 404 F.3d at 39. Indeed, it is far more likely that an adversarial party would invoke Rule 9011 for slight cause, so it makes little sense to impose a stricter standard on actions brought by the court *sua sponte*. *Id*. at 40.

The language of Rule 9011 supports the holding of *Jenkins* and *Young*. Rule 9011 imposes an affirmative duty to conduct an "inquiry ***reasonable under the circumstances***." Fed. R. Bankr. P. 9011(b) (emphasis added); *see also Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. at 551 (Rule 11 "imposes . . . an affirmative duty to conduct a reasonable inquiry into the facts and law before filing"). Although Rule 9011(c)(1)(A) was amended to add the "safe harbor" provision, no change was made to Rule 9011(b) or elsewhere to change the

inquiry from an objective "reasonable under the circumstances" inquiry to a subjective, good-faith inquiry. Had the drafters of the Rule intended to provide for a heightened *mens rea* standard for court-initiated proceedings, they would have included appropriate language in the Rule itself, as the language of the Rule holds more weight than do the Advisory Committee Notes. *See First Nat'l Bank of Lincolnwood v. Levine (In re Evanston Motor Co.)*, 735 F.2d 1029, 1031-32 (7th Cir. 1984) (interpreting rule so as to not "give the Advisory Committee's general guidance greater vitality than the clear language of the rule itself"); *cf. United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1997), *cert. denied*, 522 U.S. 1120 (1998) (with regard to the Federal Rules of Criminal Procedure, "the Advisory Committee Note is not the law; the rule is").

Even if this Court thought a substantive bad faith standard should apply when the Rule 9011 action is initiated by the bankruptcy court *sua sponte*, it "would not be free to implement this standard outside of the rulemaking process." *See Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. at 549 (refusing to read a subjective bad faith standard into Rule 11 for sanctions against represented parties). As Rule 9011 is written, there is no difference in the standard regardless of whether the action is initiated by a party or by the court. In each instance the signer of the document must show that it conducted an inquiry reasonable under the circumstances.[13]

In light of the foregoing, the Appellants' request to apply a subjective standard should be rejected. As the objective standard applied by the bankruptcy court was consistent with Supreme Court and Third Circuit precedent interpreting Rules 11 and 9011, it was not reversible error.

---

[13] To the extent that this Court does adopt a subjective bad faith standard for Rule 9011 sanctions, this case should be remanded to the bankruptcy court to determine if such standard has been met.

19

### C.    The Bankruptcy Court Provided the Appellants With Ample Due Process Before Imposing Sanctions

Rule 9011(c) requires "notice and a reasonable opportunity to respond" before a sanction may be imposed.  Under Rule 9011(c)(1)(B), the bankruptcy court may initiate Rule 9011 proceedings by "enter[ing] an order describing the specific conduct that appears to violate subsection (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."  The Rule 9011(c)(1)(B) requirements are intended to ensure that sanctioned parties receive due process.

The Third Circuit has held that, when sanctioning attorneys, due process requires "particularized notice" and "a meaningful opportunity to be heard."  *Fellheimer, Eichen & Braverman P.C. v. Charter Techs., Inc.*, 57 F.3d at 1225-27.  The notice required, however, need not necessarily state the precise provision under which sanctions are to be imposed, provided the attorney has advance notice that the court is considering sanctions for specified actions. *Id.* at 1226 (where notice did not state that court would use its inherent power to impose sanctions, law firm nevertheless had sufficient advance notice that sanctions for bad faith conduct were being considered).  As for an attorney's opportunity to be heard, it is sufficient if after receiving notice of the sanctionable conduct the attorney has ample opportunity to be heard on the record and sufficient time to brief the issue.  *Id.* at 1227.

The bankruptcy court below initiated Rule 9011 proceedings by means of the June 9, 2008, order.  Although that order was not termed an "order to show cause," it did ***order*** Ms. Doyle and "[t]he partner in charge of HSBC's bankruptcy work" at the Udren Firm to appear and testify.  In addition, it ordered them to testify regarding ***specific conduct*** taken by the Udren Firm, namely advocating the Motion for Stay Relief by presenting "admissions" known to be

20

false, and filing documents without first conducting a reasonable inquiry. Also, it expressly

warned that *sanctions* for this conduct were being considered. Although the June 9, 2008, order

did not expressly refer to Rule 9011(b), it is difficult to imagine what other sanctions the Udren

Firm thought could be applicable to its filing papers without conducting a reasonable inquiry. If

there was any doubt, it was clearly dispelled when, at the beginning of the first hearing held on

the June 9, 2008, order, the bankruptcy court stated that Rule 11 was implicated by papers filed

by the Udren Firm without a reasonable inquiry.

In objecting to the procedure used by the bankruptcy court, the Appellants seek to exalt

form over substance. They received all of the process to which they were due under Rule

9011(c), especially in light of the exceptionally lenient educational "sanctions" ultimately

imposed by the bankruptcy court. The Appellants were sanctioned over ten months after the

bankruptcy court issued its June 8, 2008, order. During that extended period the Appellants had

the opportunity to provide extensive testimony at four evidentiary hearings as well as a written

submission. They knew from at least July 23, 2008, if not June 9, 2008, that they were subject to

Rule 9011 sanctions based on the filing of documents without reasonable inquiry. As a result,

they were not blindsided by the bankruptcy court's imposition of Rule 9011 sanctions in April

2009.

Indeed, the Appellants have not been hamstrung in presenting their position to the

bankruptcy court. Through counsel, they have exhaustively presented their position – they

simply believe they did nothing sanctionable. It is difficult to imagine how much more of a

showing they could have made if the bankruptcy court's order had been called an "order to show

cause" and had expressly referred to Rule 9011(b). Given the thorough record developed below,

a remand for further proceedings would be a waste of judicial time and resources.

The procedure used by the bankruptcy court was consistent with Rule 9011(c)(1)(B).

Even if such procedure was erroneous, moreover, such error was harmless. Accordingly, the

ruling of the bankruptcy court should be affirmed.

## II.    THE BANKRUPTCY COURT DID NOT ERR IN SANCTIONING MS. DOYLE UNDER RULE 9011 FOR HER FAILURE TO CONDUCT A REASONABLE INQUIRY BEFORE SIGNING AND FILING DOCUMENTS

### A.    Ms. Doyle Did Not Conduct an Inquiry Reasonable Under the Circumstances

The bankruptcy court imposed a mild non-monetary sanction on Ms. Doyle because she

"failed to observe her duty to make reasonable inquiry of the two documents she signed."  D.I.

193, slip op. at 50.  By Ms. Doyle's own admission, her "inquiry" regarding the Motion for Stay

Relief was limited to a review of the same NewTrak "screen prints" that a Udren Firm processor

had used to draft the document, and she made no inquiry whatsoever as to facts underlying the

Reply to Proof of Claim Objection since it "seemed accurate."  D.I. 169 at 7:17-18; 8:4, 8-9; 9:1;

31:11; 55:8-10; 58:19-20.  Although she was content to simply rely on the Proof of Claim and

NewTrak "screen prints," she had no idea what the source of those numbers was.  *Id*. at 31:5-23;

40:23, 41:1-7; 56:24, 57:3-5; 61:1-8.  There was no sworn testimony or other evidence that time

pressures precluded her from doing a more thorough inquiry.  Indeed, it apparently never

occurred to Ms. Doyle to do any further inquiry, as the Udren Firm's policy appears to have been

to simply review NewTrak "screen prints" in preparing documents for filing with the court.

The bankruptcy court's finding that the documents signed and filed by Ms. Doyle were

"rote averments from form pleadings signed without any inquiry" was consistent with the record

developed below, and so was not reversible error.  A reasonable attorney would not have signed

22

and filed such pleadings without first conducting an inquiry beyond blind reliance on unverified

numbers provided from an unknown source.

The Appellants' brief does not even address the reasonableness of Ms. Doyle's pre-

signing inquiry.  Instead, it concentrates on whether the pleadings filed were factually accurate.

Appellants' Brief at 21-25, 27.  But, as the Third Circuit has held, an attorney who signs a

pleading without conducting a reasonable inquiry is subject to Rule 11 sanction even if the

information in the document turns out to be correct.[14]  *Garr v. U.S. Healthcare, Inc.*, 22 F.3d at

1279.

When she signed and filed the Motion for Stay Relief, Ms. Doyle knew only that it was

consistent with the "screen prints" received from NewTrak; she had no idea whether the

information was accurate, or even whether HSBC or an agent acting on its behalf had put the

information on NewTrak.  Although the Appellants will presumably argue that they reasonably

relied on information provided by their client, that argument is unavailing because "[b]lind

reliance on the client is seldom a sufficient inquiry" for Rule 9011 purposes.  *See In re Kunstler*,

914 F.2d 505, 514 (4th Cir. 1990); *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783,

788 (5th Cir. 1986); *Brubaker Kitchens, Inc. v. Brown*, 2006 WL 3682180 *3 (E.D. Pa. Dec. 11,

2006), *aff'd*, 280 F. App'x 174 (3d Cir. 2008).

Similarly, when she signed the Reply to Proof of Claim Objection, Ms. Doyle knew only

that it was consistent with the Proof of Claim filed by Moss Codillis; she had no idea whether the

information was accurate. Although Ms. Doyle might have counted on Ms. Borreson of Moss

---

[14]In any event, both the Motion for Stay Relief and the Reply to Proof of Claim Objection stated
that the Taylors had no equity in their home – which was not accurate, in light of HSBC's
second amended proof of claim's acknowledgment that the Taylors' home is valued at $190,000.
*See* Claims Register for Case No. 07-15385, Claim 8-3.

Codillis having conducted a reasonable inquiry before filing the Proof of Claim, she had no way of knowing whether Ms. Borreson actually had conducted such an inquiry (and indeed, Ms. Borreson had not).  This case shows the wisdom in the Third Circuit's directive that "Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry *personally*," as signing counsel can never be certain that prior reviewing counsel (or paralegals, or processors) actually conducted an inquiry.  *See Garr v. U.S. Healthcare*, 22 F.3d at 1280 (emphasis in original)

The Appellants' Brief attempts at 22-24 to deflect attention to the Taylors' counsel. These arguments are unavailing, however, as the Taylors' counsel's actions had no affect whatsoever on Ms. Doyle's pre-signing inquiry.  The question on appeal is whether Ms. Doyle conducted an inquiry reasonable under the circumstances, not whether the Taylor's counsel acquitted herself well in this case.

The Appellants' Brief also assumes that Ms. Doyle's sanction was imposed vicariously based on the actions of Mr. Fitzgibbon.  Appellants' Brief at 26-27.  As the bankruptcy court's decision makes clear, however, Ms. Doyle was appropriately sanctioned due to her own failure to conduct an inquiry reasonable under the circumstances before signing and filing documents with the bankruptcy court.  *See In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995) (holding that where "an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound").

24

**B.    The Sanction Imposed by the Bankruptcy Court Was Reasonable**

Under Rule 9011(c)(2), sanctions may include "directives of a nonmonetary nature." Sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The order imposing sanctions "shall describe the conduct determined to constitute a violation of [Rule 9011] and explain the basis for the sanction imposed."

The bankruptcy court below ordered Ms. Doyle to obtain three continuing legal education credits in professional responsibility and ethics. This is the kind of "nonmonetary sanction" envisioned by Rule 9011(c)(2). *See* 1993 Advisory Committee Notes to Rule 11 ("The court has available a variety of possible sanctions to impose for violations, such as . . . requiring participation in seminars or other educational programs[.]"). In addition, although the April 15, 2009, order did not itself describe the sanctionable conduct, it expressly provided that it was based on "the reasons stated in the accompanying Opinion" – and the bankruptcy court's 58-page opinion describes the conduct determined to violate Rule 9011 and explains the basis for the sanction imposed. As a result, the only remaining question is whether the nonmonetary sanction imposed is the least sanction that will deter Ms. Doyle and others similarly situated from signing and filing documents without conducting an independent inquiry reasonable under the circumstances.

The Appellants assert that Ms. Doyle's mild sanction is "a manifest injustice" and "in the nature of an ethical violation." Appellants' Brief at 27. Given the record developed below, requiring Ms. Doyle to obtain an additional three hours of continuing legal education is hardly a "manifest injustice"; indeed, the bankruptcy court could easily have imposed a monetary

25

sanction, but chose not to.  *Cf. In re Ulmer*, 363 B.R. 777, 785 (Bankr. D.S.C. 2007) (imposing

sanction of $500 per violation where pleadings were filed without review of attesting attorney);

*In re Rivera*, 342 B.R. 435, 464 (Bankr. D.N.J. 2006), *aff'd*, 2007 WL 1946656 (D.N.J. June 29,

2007) (imposing sanction of $500 per violation where attorney filed faked certification with

court, notwithstanding alleged accuracy of data contained therein).  Similarly, had the

bankruptcy court actually wanted to make an ethics referral, it easily could have done so on this

record.  *See In re Rivera*, 342 B.R. at 468 (referring signing attorney and firm's managing

partner to Chief Judge of District Court for further review and ethics disciplinary proceedings).

Learning about ethics and being referred to the state ethics authorities are two dramatically

different things.  Indeed, as attending an educational course can only lead to Ms. Doyle's

betterment, it can hardly be called a "sanction" at all.

In this case, the evidence demonstrates that Ms. Doyle's errors were caused in part by a

firm culture that emphasizes speed over reasonable inquiry.  Consequently, the bankruptcy court

did not abuse its discretion when it concluded that a sanction greater than a mere reprimand was

necessary to deter Ms. Doyle and other Udren Firm attorneys from similar violations of Rule

9011 in the future.

## III.    THE BANKRUPTCY COURT DID NOT ERR IN SANCTIONING THE UDREN FIRM IN LIGHT OF MS. DOYLE'S VIOLATIONS OF RULE 9011

### A.    The Bankruptcy Court Did Not Err in Sanctioning the Udren Firm for the Rule 9011 Violations of its Attorneys

The introductory paragraph to Rule 9011(c) and Rule 9011(c)(1)(B) both expressly refer

to "law firms" as being subject to sanction for Rule 9011(b) violations.  As law firms can only

act through the humans that comprise them, these references to "law firms" can only mean that

law firms are subject to sanction under Rule 9011(c)(1)(B) if their partners, associates, or employees are found to have violated Rule 9011(b). *See In re Rivera*, 342 B.R. at 463 (holding law firm and attorney jointly liable for lawyer's Rule 9011 violation).

In addition, while Rule 9011(c)(1)(A) expressly states that "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees," that does not mean law firms may ***only*** be sanctioned when a party moves under Rule 9011(c)(1)(A). There is no logical reason for such a distinction; just because law firms are expressly sanctionable under Rule 9011(c)(1)(A) does not mean they are not sanctionable under Rule 9011(c)(1)(B). After all, the statement in Rule 9011(c)(1)(A) lays out a default – law firms are to be sanctioned for violations committed by their partners, associates, and employees "absent extraordinary circumstances." If sanctioning law firms is the rule, then it is no less the rule when sanctions are initiated by the court rather than a party.[15]

The bankruptcy court below found that Mr. Fitzgibbon and Ms. Doyle had both committed Rule 9011(b) violations. As Rule 9011 provides for the sanction of a law firm whose attorney commits a Rule 9011(b) violation, the bankruptcy court did not err in imposing a sanction on the Udren Firm.

Although the bankruptcy court's April 15, 2009, sanction order named Mr. Udren and

---

[15]In Rule 11, the language regarding law firms being jointly responsible is located in the "general" section of Rule 11(c)(1), which corresponds to the introductory, unnumbered paragraph of Rule 9011(c). When Rule 9011 was amended in 1997 to conform with the 1993 amendments to Rule 11, however, this language was inserted into Rule 9011(c)(1)(A) – which is actually the equivalent of Rule 11(c)(2). It would appear that the language was simply inserted into the wrong paragraph; as the 1997 amendments were intended to bring Rule 9011 in line with Rule 11, the language should have been inserted into the introductory paragraph to Rule 9011(c). *See* 1997 Advisory Committee Note to Rule 9011 ("This rule is amended to conform to the 1993 changes to [Rule] 11.").

Ms. Doyle, rather than the Udren Firm itself, in imposing the sanction to learn about NewTrak and teach about the escalation procedure and Rule 9011 due diligence, this is simply because the bankruptcy court imposed an educational "sanction" that must of necessity must be imposed on an individual rather than an entity. Had the bankruptcy court imposed a monetary sanction, it could have been separately imposed against the Udren Firm's coffers, which are distinct from the personal accounts of Mr. Udren and Ms. Doyle. A non-monetary educational sanction, on the other hand, must necessarily be imposed not on the artificial entity "the Udren Firm" but on the persons responsible for the firm's bankruptcy practice – namely, Mr. Udren (its president and 100% shareholder) and Ms. Doyle (its managing attorney). Thus, the bankruptcy court's naming of Mr. Udren in the April 15, 2009, order is best viewed as a sanction against the Udren Firm, not against Mr. Udren personally.

### B.    The Sanction Imposed by the Bankruptcy Court Was Reasonable

As with the sanction imposed on Ms. Doyle, the bankruptcy court only directed the Udren Firm to engage in education. Although it is unclear in any case why the Udren Firm would resist an opportunity to correct practices that have led to erroneous filings, they cannot demonstrate that such a remedy is inappropriate or burdensome. *Cf. U.S. Nat'l Bank Ass'n v. Sullivan-Moore*, 406 F.3d 465, 471-72 (7th Cir. 2005) (finding "nothing excessive or unduly burdensome" with ordering law firm attorneys to attend 16-hour course in civil procedure where firm attorney had violated Rule 11 in foreclosure proceedings).

As the bankruptcy court decided not to impose a monetary sanction on the Udren Firm, an imaginative nonmonetary sanction was required.[16] A sanction against the firm in addition to

---

[16]Although the Appellants' Brief at 26 n.8 states that the Udren Firm has arranged for training on NewTrak, there is no suggestion that the Udren Firm has also scheduled internal education

Ms. Doyle was necessary because, given the internal and external forces on Udren Firm attorneys to process documents quickly, imposing a sanction only against Ms. Doyle will not ensure that other Udren Firm attorneys comply with Rule 9011 in the future. *See* 1993 Advisory Committee Note to Rule 11 (an inquiry regarding sanctioning a law firm in addition to an individual attorney "may be appropriate in cases involving . . . institutional parties that frequently impose substantial restrictions on the discretion of individual attorneys employed by it"). Similarly, a mere reprimand would do nothing in the face of the internal and external pressure to cut corners so as to file pleadings faster than the competition.

Given the Udren Firm's "speed" culture, which led to Mr. Fitzgibbon's and Ms. Doyle's Rule 9011 violations, the educational sanction arrived at by the bankruptcy court is the mildest sanction likely to get the Udren Firm's attorneys to ensure that their pre-filing inquiries and subsequent advocacy of documents filed with the court in future cases do not run afoul of Rule 9011. And, education regarding Rule 9011 appears to be sorely needed at the Udren Firm. Even with their decades of experience, Ms. Doyle and Mr. Udren see nothing wrong with cutting ethical corners by filing documents without doing any more of an inquiry than simply ensuring that the numbers on the page equal the numbers on a screen displaying data input by an unknown source. While the Udren Firm's desire to process documents quickly may be understandable, when the end result of these documents is to remove a family from its home it is not too much to ask creditors and their counsel to turn sharp corners.

As the bankruptcy court's sanction against the Udren Firm is consistent with the

---

regarding HSBC's escalation procedure and the due diligence requirements of Rule 9011 – which is actually more important than the bankruptcy court's direction that Mr. Udren familiarize himself with the workings of NewTrak.

nonmonetary sanctions contemplated by Rule 9011, it was not an abuse of discretion, and should

be affirmed.

### CONCLUSION

For these reasons, the Acting United States Trustee respectfully asks this Court to affirm

the bankruptcy court's order.

Respectfully submitted,

ROBERTA A. DEANGELIS
ACTING UNITED STATES TRUSTEE
REGION 3

By:    <u>/s/ Frederic J. Baker</u>
Frederic J. Baker, Senior Assistant United States Trustee
Robert J. Schneider
George M. Conway
United States Department of Justice
Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 597-4411


P. Matthew Sutko
John P. Sheahan
United States Department of Justice
Executive Office for United States Trustees
20 Massachusetts Ave, N.W.
Washington, DC  20530
(202) 307-1399


Dated: July 2, 2009