IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

NILES C. TAYLOR AND
ANGELA J. TAYLOR,
Debtors

Bankruptcy Appeal

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

No. 09-02479

APPEAL OF THE UDREN LAW FIRM,
MARK J. UDREN, ESQUIRE AND
LORRAINE DOYLE, ESQUIRE,
Appellants.

---

**REPLY BRIEF OF APPELLANTS
THE UDREN LAW FIRM,
MARK J. UDREN, ESQUIRE AND
LORRAINE DOYLE, ESQUIRE**

---

Appeal from the Order of the United States Bankruptcy Court
for the Eastern District of Pennsylvania dated April 15, 2009

Wilentz Goldman & Spitzer, P.A.
Daniel S. Bernheim, 3d, Esquire
Jonathan J. Bart, Esquire
Dashika R. Wellington, Esquire
Attorneys for Appellants

Two Penn Center, Suite 910
Philadelphia, PA 19102
215-636-4466

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   THE TRUSTEE IMPROPERLY MISSTATES THE NATURE OF THE BANKRUPTCY COURT'S INQUIRY IN ORDER TO SUPPORT THE LACK OF DUE PROCESS INVOLVED IN THESE PROCEEDINGS ..................................... 1

II.  THERE IS NO CONCEIVABLE BASIS UPON WHICH TO IMPOSE RULE 9011 SANCTIONS UPON LORRAINE DOYLE, ESQ. OR MARK UDREN, ESQ. ........ 8

III. THERE WAS NO EVIDENCE THAT LORRAINE DOYLE, ESQ. DID NOT PERFORM REASONABLE INQUIRY AS REQUIRED BY RULE11(b)(3) ................................................................................................................ 10

IV.  THE SEVERITY OF THE SANCTIONS IS COMPLETELY IRRELEVANT ..................................................................................................... 13

V.   CONCLUSION .............................................................................................................. 16

VI.  CERTIFICATE OF SERVICE ..................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

Fellheimer, Eichen & Braverman, P.C. v. Charter Techs, Inc.,
   57 F.3d 1215 (3rd Cir. 1995) ............................................................................... 14

Saint Amant v. Bernard,
   859 F.2d 379 (5th Cir. 1988) ................................................................................ 10

**Rules**

11 U.S.C. §362(d)(2) ................................................................................................ 8

Rule 11 ............................................................................................................. passim

Rule 11(b)(3) ........................................................................................................... 10

Rule 9011 ......................................................................................................... passim

Appellants, Mark J. Udren, Esq., Lorraine Doyle, Esq. and the Udren Law Firm respectfully submit their Reply Brief in Support of their Appeal from the Order of the Bankruptcy Court dated April 15, 2009.

## I. THE TRUSTEE IMPROPERLY MISSTATES THE NATURE OF THE BANKRUPTCY COURT'S INQUIRY IN ORDER TO SUPPORT THE LACK OF DUE PROCESS INVOLVED IN THESE PROCEEDINGS

It is astonishing that in attempting to support the procedures utilized by the Bankruptcy Court, which resulted in the imposition of a sanction against attorneys <u>who did absolutely nothing wrong</u>, the Trustee attempts to rely on what the Bankruptcy Judge stated in a mere colloquy with counsel as the predicate for the investigation rather than the actual language of the Order to Show Cause. <u>See</u>, Appellees' Brief at p. 8. That Order, which is the operative document establishing the parameters of the proceeding, **never** alerted The Udren Firm or the other Appellants to the matters which eventually provided the basis for the Court's ruling. Indeed, as the Trustee notes in her brief, it was **never** the original intention of the Bankruptcy Court that there be <u>any</u> investigation as to the filing of the motion for relief from stay filed by Lorraine Doyle, Esq. of the Udren Firm on behalf of HSBC on January 15, 2008.[1] Appellees' Brief at p. 6.

As the Trustee recognizes on page 6 of her brief, while the Bankruptcy Court was dissatisfied with Mr. Fitzgibbons' presentation of outdated and unanswered (thus

---

[1] The Trustee goes as far as to make an outright misrepresentation that the motion for relief did not properly credit the debtors for post-petition payments they had made. She basis this on the false statement that the December payment had been received prior to the filing of the motion. **This is not true and the Trustee knows it.** The undisputed record reflects that as of the time of the filing of the motion, only two payments had been received by HSBC, and each was insufficient to satisfy what the Debtors' Schedules reflected was due - - so that the motion reflected one full payment and a suspense balance. Indeed, the Debtors failed to pay flood insurance premiums which not only were reflected in their Schedules, but which had been conclusively determined to be due in a foreclosure judgment which was <u>res judicata</u> on that issue. To assert that Udren or HSBC did something wrong by not giving full credit to short payments invents "facts" which are untrue. As a matter of law, the Debtors owed the flood insurance premiums as part of their post-petition payments.

1

admitted) Requests for Admission as the basis for going forward on the motion for relief (she **never** took exception to any of the averments made in the motion itself drafted by Ms. Doyle), <u>the Bankruptcy Court ruled at that time that there would be no sanctions issued against The Udren Firm or its attorneys predicated upon that motion</u>. As recited in the Trustee's Brief, the Bankruptcy Court already had decided not to impose sanctions based on the Motion for Relief From Stay:

> [t]he Bankruptcy Court directed Mr. Fitzgibbon to "pass it up the line that I was not pleased with this motion for relief," but that the court was "<u>cutting them a break this time</u>."
>
> Transcript of May 1, 2008 hearing at p. 45. Trustee's Brief at p. 6.

Accordingly, the Trustee herself acknowledges that the Bankruptcy Court determined that no sanctions were to be issued with respect to the motion for relief from stay, which was concluded at the May 1st hearing, **and that it was never a proper part of the Order to Show Cause issued more than a month later.** The Trustee, in her brief, now has attempted to provide a revisionist history not only as to the facts, but as to the procedural setting of the Order to Show Cause, **which only involved the issue of the flood insurance and the accounting requested concerning the flood insurance.**[2]

---

[2] Once again, the Trustee misrepresents the record to state that a pre-petition accounting was either requested or relevant because there were issues as to plan confirmation and the feasibility of the Debtors plan. Trustee's Brief at p. 6, fn. 7. However, HSBC had not filed an objection to the plan, was not part of that motion (filed by the Chapter 13 Trustee) and no discovery had been sought from HSBC as to any feasibility issues. To suggest that a pre-petition accounting had been requested of The Udren Firm because of plan confirmation issues is simply an outright misrepresentation of the record. All that was requested from Mr. Fitzgibbons was a post-petition accounting from the Debtors counsel to ascertain how much flood insurance premiums were at issue. The record shows that Mr. Fitzgibbons obtained such an accounting and simply panicked when the Court expressed displeasure that he had not obtained a pre-petition accounting.

2

The June 5th hearing was held only to continue the hearing on the issue of the objection to HSBC's claim. As noted in the Appellants' main brief and nowhere denied by the Trustee, the **only** subject of the objection to claim was the imposition of charges for forced placed flood insurance. See, docket item 31. As the Bankruptcy Court itself recognized, flood insurance had not been imposed by HSBC but rather, was charged because the Debtors' property had been placed on a flood map by FEMA, an agency of the United States Government and <u>it was the Debtor's obligation to have it removed</u>. R. 5/1/08 at pp. 37-38. It was thus the Debtors responsibility to utilize the administrative procedures (the forms for which were provided by HSBC to Debtors counsel not once, **but twice**) and challenge the flood plain designation in order to have the charges removed. No "accounting" had anything to do with this issue. Indeed, only after HSBC yet again walked the Debtors through the process for a third time, did they properly petition FEMA to drop the designation and this is how the flood designation eventually was dropped.[3]

Accordingly, when the Court issued its Order to Show Cause because a young Udren Law Firm associate panicked when the Bankruptcy Court admonished him for having not obtained a pre-petition accounting which he never requested <u>because he did not know it was required</u> and stated instead that he was unable to communicate with his client, a series of actions was unleashed that somehow lead to the Trustee's avid

---

[3] Once again, the Trustee misrepresents the record by suggesting that HSBC eventually realized that it was wrong and settled the flood insurance issue by crediting some insurance payments and late fees which had been charged to the Debtors account. See, Trustee's Brief at p. 4. This goes beyond forceful advocacy and is unseemly when coming from the Trustee's office. As the Trustee is well aware, HSBC's willingness to provide a credit to settle the objection to proof of claim had nothing to do with whether HSBC had improperly charged the Debtors for flood insurance in the first instance. Rather, the flood insurance was properly obtained (and the cost was reflected in the Debtors own Schedules) because FEMA had placed the property in a flood plain zone. After the Debtors finally took the proper action to delete that designation, the flood insurance was dropped. Once again, neither HSBC nor The Udren Firm did anything wrong and the inference that the Debtors were given credits as an acknowledgment of wrongdoing is outrageous.

prosecution of a claim against Fidelity National Information Services and Moss Codellis (the latter of which continues to this day) but virtually took no interest in any potential Rule 11 or ethics violations by the Udren Law Firm <u>until this appeal</u>. Now, a completely new revisionist history has been manufactured to support an investigation that was deeply flawed both in terms of due process and in terms of its factual findings. The Trustee misstates undisputed facts to argue that payments that were made <u>after</u> pleadings were filed to argue that those subsequent payment render those pleadings to be violative of Rule 9011. That is an astounding contention - - the pleadings must be judged as of the date they were filed.

The undisputed record shows that the motion for relief from stay <u>accurately reflected</u> that only one full payment had been made four months into a bankruptcy (and one payment was short of the amount owed), yet the Trustee argues that a third payment made two days after the Motion was filed and later payments which still left the Debtors two months past due rendered the prior filed motion somehow inaccurate. More importantly, however, is the fact that the Order to Show Cause never indicated what pleadings were to be the subject of a Rule 11 violation, what was wrong with those pleadings and how the Udren Firm should be on notice to defend itself - - all of which are <u>essential</u> elements of a proper Rule 11 motion brought on by the Court. As the Trustee herself admits, <u>the Court had already made a ruling that it would not impose sanctions for the motion for relief.</u> Trustee's Brief at p. 6.[4] Because the Bankruptcy Court already had ruled that no sanctions would be imposed as a result of the motion for relief from stay,

---

[4] Even assuming that a Rule 11 sanction could have been imposed for Mr. Fitzgibbons' actions in proceeding on the request for admission, that could not, <u>as a matter of law</u>, be used to impose liability to either Ms. Doyle or Mr. Udren under Rule 9011. Rather, only the firm could have been responsible for Mr. Fitzgibbons' actions at that stay hearing and the Court specifically stated that no sanctions would be imposed for that.

4

the only reasonable inference which could be derived from the Order to Show Cause which simply required that specified persons appear and provide testimony concerning "questionable practices" was that the investigation would not include the motion for relief.[5] As discussed in Appellant's prior brief, an Order to Show Cause seeking testimony on "signing and filing pleadings without knowledge or inquiry regarding the matters pleaded therein," without any specification of the pleadings involved or of the alleged untrue statements is a violation of due process and Bankruptcy Rule 9011/Federal Rule 11. Such an Order, especially on the far more demanding standards required of a court initiated motion (where there is no "safe harbor"), simply cannot be the basis for what became in effect, a fishing expedition that even to this date permits the Trustee to invent revisionist facts in a desperate attempt to hold on to an opinion reflecting the court's justifiable concern that an attorney had the freedom of unfettered contact and communication with his client.

The Udren Firm's actions were never at the crosshairs of this investigation, yet the Trustee desperately holds onto sanctions improperly entered against attorneys that absolutely did nothing wrong because the Trustee's office failed to meet its burden of proof with respect to its target, i.e., Fidelity. Nowhere, in its brief, does the Trustee explain how the Udren Firm was (1) put on notice that the issue of information received by The Udren Firm from HSBC for the motion for relief was ever to be at issue, (2) how the Udren Firm was put on notice of the alleged pleading that was incorrect and how the Udren Firm should have known that it was incorrect, (3) why the Udren Firm is not

---

[5] While a footnote in the Order to Show Cause again raised the issue of whether sanctions should be imposed for pressing a motion for relief on admissions known to be untrue (Id. at fn.1), **that issue already had been decided on May 1.** It appears that the Court had failed to recall its own prior determination on this issue. There was **never** any issue as to the factual basis for the motion for relief.

entitled to rely on information received from its client, but rather, has some duty "to investigate" the underlying payment history (presumably to obtain all of the cancelled checks and post-dates - - something that no attorney in this country would do) or (4) how individual attorneys at the Udren Firm (Mark Udren and Lorraine Doyle) could possibly be subject to sanctions for anything other than what they personally did? Yet that is how the Bankruptcy Court's opinion eventually was decided. The Trustee's attempt to sidetrack this court by providing a revisionist history as to the facts and ignoring the issue of the due process considerations involved should not be countenanced. The Udren Firm, once again, directly challenges the Trustee to set forth **anything** that was incorrect in either of the two documents filed by The Udren Firm, the motion for relief and the response to the objection to claim and state how that violates Rule 11. **It cannot do so.** That is why, in its brief, it attempts to create a new rule 11 violation for "thought crime" by suggesting that Lorraine Doyle did not adequately investigate information she received from NewTrak, even though no record ever was made that any information she received was incorrect and why she should not be permitted to rely on a bank's internal financial records for the purpose of a filing a motion for relief. If every attorney is required to do its own due diligence as to the bona fides of financial information given to it by a bank or other financial services client, the costs would be enormous and of course, would be directly passed down to borrowers. No bankruptcy court would permit a law firm to charge five to ten hours to investigate the payment history of a Chapter 13 debtor for the purpose of a motion for relief from stay rather than rely on the Bank's computer screens. Yet that is what the Trustee, in its revisionist account of these proceedings, attempts to argue. The Trustee's position simply not based on reality, nor can sanctions

issue for failing to "adequately investigate the motion," in the absence of a single piece of evidence indicating that anything filed was incorrect. Once again, the record conclusively shows that Ms. Doyle did absolutely nothing wrong and her pleadings were completely factually accurate as supported by the undisputed record. Moreover, the Order to Show Cause never put her on notice that she would be subject to the kind of sanctions imposed against her nor the basis for the imposition of those sanctions.

**II.    THERE IS NO CONCEIVABLE BASIS UPON WHICH TO IMPOSE RULE 9011 SANCTIONS UPON LORRAINE DOYLE, ESQ. OR MARK UDREN, ESQ.**

The two briefs filed so far demonstrate conclusively that no pleading signed by Lorraine Doyle (and no pleadings were signed by Mark Udren) were in any way incorrect or inaccurate. The Motion for Relief From Stay was literally true, reflected that as of January 15, 2008 that one post-petition payment had been made and another had been applied to a suspense account.[6] Moreover, as noted repeatedly above, the judge already had stated that there were to be no sanctions imposed with respect to the Motion for Relief From Stay.

The response to the objection to claim was a short one paragraph response and must be compared with the objection itself. The objection (docket entry 31) was limited to the sole issue of flood insurance - - something that the judge herself pointed out at the May 1st hearing. Thus, when the Debtor objected to the claim on the basis that flood insurance had been imposed that were unwarranted, the response that all charges were appropriate dealt only with the flood insurance issue, not anything else. Nowhere in the response to the objection was there any statement by Ms. Doyle that the note attached to the Proof of Claim was the correct one as the response had nothing to do with that issue.

Accordingly, there is absolutely nothing of record which would justify the imposition of sanctions based on a pleading placed before the Court by either Mr. Udren

---

[6] The Trustee makes a major thrust as to the allegation that the Debtor did not have equity in the property. This was based, of course, on a proof of claim provided to the Udren Firm by HSBC but it was not material to the motion for relief in that the motion was based on cause, not lack of equity and the lack of necessity of the Debtor for the home. This is yet another "red herring" raised by the Trustee to try to interject facts which were never part of the proceeding below. At no time did anybody, including the Court, make an issue as to the equity in the part as part of the calculus for relief from stay. The Debtors admitted that there was no equity in any event by failing to respond to Requests for Admission. Indeed, the Debtors never contested the issue of equity and the motion for relief was not based on the lack of equity (11 U.S.C. §362(d)(2)). Rather, the relief motion was based solely on non-payment of post-petition mortgage payments - - as to which the equity in the home was irrelevant.

(who drafted nothing) or Ms. Doyle. Rule 9011 does not permit vicarious liability to be imposed on other individuals of the law firm but rather, only against the law firm itself. Any sanctions against the law firm would be an incongruous result in any event inasmuch as Mr. Fitzgibbons was not sanctioned. There simply is no justification on this record for the imposition of sanctions with respect to the motion for relief or the response to the objection for claim where there is nothing whatsoever incorrect in either of those documents.

### III. THERE WAS NO EVIDENCE THAT LORRAINE DOYLE, ESQ. DID NOT PERFORM REASONABLE INQUIRY AS REQUIRED BY RULE 11(b)(3)

There is no question that Rule 11 and Bankruptcy Rule 9011 require a "reasonable inquiry" into the facts contained in a motion. Having been forced to concede that there was nothing in either pleading filed by Ms. Doyle that was factually incorrect, the Trustee is forced to move to the realm of "thought crime" and suggests that Ms. Doyle simply blindly accepted the information which she received through the NewTrak system from her client and that such inquiry is unreasonable. Of course, the Trustee does not proffer any evidence on the standard of reasonableness, as such evidence would necessarily have been required to be by the form of expert testimony, which the Trustee did not present. However, the very notion that Ms. Doyle needed to obtain the original source records from HSBC is per se frivolous. Rule 11, in the advisory committee notes, discusses "reasonable inquiry" and states:

> What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signor; <u>whether he had to rely on a client for information as to the facts underlying the pleading</u>, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Advisory Committee Note to Rule 111.

If an attorney must rely on the client for the facts, he escapes liability under Rule 11 as a matter of law. <u>Saint Amant v. Bernard</u>, 859 F.2d 379 (5th Cir. 1988), citing, Rule 11 advisory note.

No lawyer would insist on looking at cancelled checks and other evidence of original source documents rather than accept the screened entries provided by the bank to indicate a payment history. It is undisputed that Ms. Doyle testified that she read and relied upon the screen prints provided to her through the NewTrak system for the current status of the loan before she filed either of her two pleadings. In fact, the screen prints were correct and there were no errors in either pleading. The Trustee's argument that Ms. Doyle was required to do something more than utilize the on-line payment history for her motion simply comes out of thin air. Such a requirement would be unreasonable and would drastically increase the cost in what has become a volume business because of objections from the U.S. Trustee's office and debtor's counsel as to fees incurred by lenders in bankruptcy cases. It simply is an unrealistic position that foreclosure and bankruptcy counsel must investigate whether the compiled information on screen prints is correct. Ms. Doyle did everything necessary to investigate and plead the basis for relief from stay and respond to the objection to claim to put the ownest on debtor's counsel to contest any of these facts.

Unfortunately, both the Trustee and apparently the bankruptcy judge lost sight of the fact that "contested proceedings" such as stay relief motions and claims objections are given that title for a reason - - <u>we practice law in an adversary system</u>. It was incumbent upon the debtor's counsel, if the allegations of the motion for relief were incorrect or were subject to changed circumstances (such as payment) to point that out in an objection, conduct and respond to discovery and be ready to litigate the issue before the judge at the scheduled date. What these proceedings revealed is that Debtors counsel was abjectly negligent in her representation of the Debtors. Not only did she <u>not</u> provide

11

timely responses to the motion for relief such that a certification of no response was entered, she failed to respond to requests for admission, she filed knowingly false pleadings (alleging falsely on one instance that payments had been returned, which they had not and filing another pleading claiming two payments had been made which were not made until the eve of the hearing three months later). Had the Debtors' counsel done simply what was required of her, there never would have been any issue in this case. To place the onus for defending a motion on the party asserting the motion violates every tenet of our adversary system. Accordingly, while there is no question that there is a duty of investigation and reasonable grounds for a motion, they were amply satisfied in this case. The failure occurred wholly on the debtor's side of the ledger, yet the Debtors attorney was not sanctioned nor was the young associate whose panic resulted in the institution of the investigation the first instance[7] subject of sanctions. Instead, the law firm, Mr. Udren and Ms. Doyle were sanctioned - - something which gravely harms their careers - - and there was no basis whatsoever for the imposition of sanctions on them.

---

[7] This is not to place any blame on Mr. Fitzgibbons, whose inexperience is something that will resolve over time. However, to place any sort of responsibility for Mr. Fitzgibbons' oral representation to the Court concerning an attempt to communicate with the client upon any other attorney in the Udren Firm is unsupportable and not proper under Rule 9011. Indeed, Ms. Doyle was not even Mr. Fitzgibbons' supervisor within the Udren Firm. Yet she is made to be a "scapegoat" simply as a result of having filed the initial pleadings in this action.

## IV. THE SEVERITY OF THE SANCTIONS IS COMPLETELY IRRELEVANT

While abjectly unable to respond to the procedural infirmities in the Court's investigation[8] the Trustee's primary argument in its brief is that the sanctions imposed were relatively minor and therefore, she cannot understand what the Udren Firm, Ms. Doyle and Mr. Udren are complaining of. This may be the weakest of all of the Trustee's arguments, notwithstanding its stress in the brief. Lorraine Doyle was found to have committed an ethics violation by the Court and required to take additional ethics courses by the Court. **She did nothing wrong to deserve this.** The Udren Firm was sanctioned for Ms. Doyle's alleged conduct and required to have firm wide educational sessions. The Trustee argues that the sanction imposed was reasonable. This, of course, is not an issue on appeal - - it is the issue of whether any sanctions were warranted at all. However, as long as the Trustee brings up that issue (apparently attempting to color the argument with a view toward the lack of "severity" in the sanctions), the fact is that the Bankruptcy Court entered an Order staying the sanctions pending appeal **precisely** because of the severe impact that sanctions would have on the Udren Firm. In that motion, the Udren Firm proffered uncontradicted testimony that sanctions would have to

---

[8] The Trustee rather frivolously argues that the advisory committee notes (which it cites when useful for its own case) providing that sua sponte Rule 9011 motions require a finding of conduct "akin to contempt" should not apply because it is not found in the Rule itself. However, the Trustee fails to delve into the reasons why such a Rule is so manifestly required. Unlike a party driven Rule 9011 motion, the Udren Firm had no opportunity to correct any of its pleadings within a twenty-one day "safe harbor period". Given the Trustee's argument, that the motion for relief (which was not even intended to be in the investigation) was inaccurate because of the allegation of no equity, the Udren Firm would have had the opportunity to delete that allegation, which was irrelevant to the motion in any event. By the Trustee's own analysis, the **only** reason why Udren was sanctioned was because it had no opportunity to remove a superfluous allegation. Accordingly, the purpose of Rule 9011 is ill-served by creating a "strict liability" standard for violations. The only way to keep court driven Rule 9011 motions within the spirit of the Rule is to require that conduct be egregious or "akin to bad faith or contempt" - - otherwise, a party may be sanctioned for innocuous errors in a pleading or as here, claims that subsequent payments render a motion which was accurate when filed subject to sanctions.

13

be reported to Fannie Mae and Freddie Mac and that the Udren Firm could lose its ability to work for these governmental agencies as well as major banks simply for the fact of having been sanctioned. The sanctions themselves are the severe harm - - not the remedies utilized by the Bankruptcy Court.

As to the argument of whether the standard for a court initiated motion should be based on objective verses subjective conduct, nothing more be said than noting that the case relied upon by the Trustee, Fellheimer, Eichen & Braverman, P.C. v. Charter Techs, Inc., 57 F.3d 1215, 1225 (3rd Cir. 1995) was a Rule 11 motion made by an opposing party - - not on a sua sponte court motion. Accordingly, it is completely distinguishable and irrelevant to the issue before this Court. As noted above, had a party provided the 21 day safe harbor letter to the Udren Firm, the Udren Firm would have had the opportunity to correct any misstatements.[9] The Udren Firm could have corrected its pleading. The Udren Firm will rely on the plain language of Rule 11, with the advisory note comment and the strong case law that there is a substantially stronger requirement for sanctions on a sua sponte motion because of the absence of the safe harbor provision. While there is disagreement among the circuits as to the necessity of behavior akin to contempt, there is no dispute whatsoever that there is a substantially stricter requirement for a court sponsored Rule 11 motion. The Court failed to meet the requirement of that stricter standard by failing to identify the specific conduct which was the subject of the investigation and then by imposing sanctions for extremely minor infractions, which has forced the Trustee to engage in revisionist history to support them. Given the fact that

---

[9] Of course, there were no misstatements, simply an allegation that there was no equity in the property, which was supported by the original proof of claim and Requests for Admission. There was no evidence produced in the entire hearing however, of an appraisal or other evidence to indicate that there was any substantial equity in the property and as noted previously, equity was not an issue on the motion for relief from stay in any event.

any misconduct in this case was committed by the Debtor's counsel, the Court had previously indicated that there would be no sanctions imposed as a result of the motion for relief from stay, the failure to identify what pleading was the subject of sanctionable behavior, and the fact that the material allegations in the two relevant pleadings that were the subject of the investigation were literally true, the very imposition of sanctions was a gross abuse of discretion and warrants reversal.

15

## V.   CONCLUSION

For all the reasons set forth herein, it is respectfully submitted that the appeal of The Udren Firm, Mark J. Udren, Esq. and Lorraine Doyle, Esq. should be sustained and the sanctions imposed by the Bankruptcy Court as to those parties be reversed in their entirety.

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

Date: July 16, 2009          BY:   /s/ Daniel S. Bernheim, 3d
                                   Daniel S. Bernheim, 3d, Esquire
                                   Jonathan J. Bart, Esquire
                                   Dashika R. Wellington Esquire
                                   Attorneys for Appellants, The
                                   Udren Law Firm, Mark J. Udren,
                                   Esq. and Lorraine Doyle, Esq.