```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                              :     CIVIL ACTION
                                    :
                                    :
NILES C. TAYLOR and                 :
ANGELA J. TAYLOR                    :     NO. 09-cv-2479-JF
                                    :

APPEAL OF THE UDREN LAW FIRM,       :     (Bankr. No. 07-15385DWS)
MARK J. UDREN, ESQUIRE, AND         :
LORRAINE DOYLE, ESQUIRE             :
```

**MEMORANDUM**

Fullam, Sr. J.                                February 18, 2010

       The appellants, two attorneys and a law firm, have appealed from an order of the Bankruptcy Court imposing sanctions upon them.  After careful consideration of the appellate record and the briefs of the appellants and the Acting United States Trustee, I conclude that the sanctions determination must be reversed.

       The appeal arises from the Chapter 13 bankruptcy case of Niles and Angela Taylor.  The Taylors' home mortgage was held by HSBC.  HSBC (through its Colorado counsel) retained The Udren Law Firm to represent the mortgagee's interest in the bankruptcy proceeding.

       According to the facts set out in the Bankruptcy Court's opinion, on January 15, 2008, the appellant Lorraine Doyle, an attorney with the Udren firm, filed a motion on behalf of HSBC seeking relief from the automatic stay (the "Stay Motion").  Bankruptcy Court Opinion at 12-13.  The information

for the Stay Motion came from a computer program known as
"NewTrak," which is used by numerous banks and mortgage
companies. The Stay Motion alleged that the Taylors had failed
to make required mortgage payments. Counsel for the Taylors then
filed a "late, and it appears inaccurate, answer in which she
contended that Debtors had tendered the payments identified and
they were returned by HSBC." Id. at 13. The debtors' counsel
also failed to respond to requests for admissions filed with the
Stay Motion. Id. at 14.

It turned out that both submissions were incorrect: the
Taylors had been making payments since filing the Chapter 13
petition, although the payments were late, and the amount was
less than HSBC believed was owed, because of a dispute over the
need for flood insurance. As the Taylors did not pay the flood
insurance premiums, each payment they made created an arrearage
that was taken out of the next month's payment, although this was
not clear from the Stay Motion. Id. The confusion on both
sides continued, leading to several postponed hearings as counsel
for the debtors filed an answer and counsel for HSBC undertook an
investigation. Id. at 15.

At a hearing on May 1, 2008, David Fitzgibbon, an
attorney with the Udren firm, argued on behalf of HSBC that the
Stay Motion should be granted because the debtors failed to
respond to the requests for admissions; he acknowledged that he

had since learned that late payments had been made and that the debtors challenged the flood insurance premium. Id. at 16. The Bankruptcy Court denied the Stay Motion, ordered the debtors to stay current on the mortgage payments and escrow the flood insurance premiums, and set a new hearing date. Counsel was also informed that although the Stay Motion was in questionable good faith the court was "cutting them a break."[1]

At the next hearing, on June 5, 2008, the debtors' counsel stated that she had requested but had not received a loan history. Mr. Fitzgibbon represented that he had opened an inquiry on the NewTrak system to request a loan history but had

---

[1] At the May 1, 2008 hearing, the following colloquy ensued:

> The Court: I'll relist the proof of claim. But I really don't think it's going to benefit from an evidentiary hearing. You need to get an accounting from your client. They need to find out what's happened to her payments and whether there are other payments that they have lost track of, and maybe you can resolve it.
>
> Mr. Fitzgibbon: I will do that, Your, Honor.
>
> The Court: Okay? Now, I know you – you know, I'm not – I understand the position of local counsel to, you know – I understand. But you can pass it up the line that I was not pleased with this motion for relief.
>
> Mr. Fitzgibbon: Thank you, Your Honor.
>
> The Court: And – and – and so that they'd better act in good faith because I'm cutting them a break this time. Because I really find this motion to be in questionable good faith.

Tr. May 1, 2008 at 45.

not received a response from HSBC. He also informed the Bankruptcy Court that he could not simply call the client, but had to use the computer system. Id. at 16-17.

On June 9, 2008, the Bankruptcy Court issued an order finding that the hearings on May 1, 2008 and June 5, 2008 had revealed certain questionable practices engaged in by attorneys and agents of HSBC which "included pressing a relief motion on admissions that were known to be untrue, and signing and filing pleadings without knowledge or inquiry regarding the matters pled therein." Order of June 9, 2008 at 1 n.1. The order also determined that "during those hearings it was apparent that local counsel for HSBC had no knowledge of the matters he was charged to handle nor any ability to communicate with anyone who had such knowledge[.]" Id. (footnote omitted). The Bankruptcy Court therefore directed various representatives of HSBC to appear for a hearing, the purpose of which "is twofold: (1) to address the Objection to HSBC's claim and (2) to investigate the practices employed in this case by HSBC and its attorneys and agents and consider whether sanctions should issue against HSBC, its attorneys and agents." Id. at 3 n.5. Several days of hearings followed, for which the Udren firm had separate counsel, as did HSBC.

On April 15, 2009, the Bankruptcy Court issued its opinion, imposing sanctions upon Ms. Doyle, Mr. Udren (the

principal of the Udren firm) and the Udren firm itself.  Although the Bankruptcy Court found that Mr. Fitzgibbon committed a Rule 9011 violation in "advocating the Stay Motion on admissions he knew to be then untrue," Opinion at 51, he was not sanctioned, because "I believe these proceedings have been very hard on this young lawyer and while lack of experience is not a defense to a Rule 9011 violation, I suspect that he has learned all that he needs to learn without protracting this unfortunate time in his nascent career."  Id. at 52.  Ms. Doyle was sanctioned because she "failed to observe her duty to make reasonable inquiry of the two documents she signed."  Id. at 50.  Ms. Doyle was ordered to take additional continuing legal education courses in ethics. Mr. Udren was sanctioned because he "sets the tone and establishes [the firm's] culture," including reliance on the NewTrak system and failure to acknowledge errors in this case. Id.  The Bankruptcy Court ordered Mr. Udren to obtain training in NewTrak and conduct a training session for all firm members. Finally, the Bankruptcy Court sanctioned HSBC, directing it to send a copy of the opinion to all firms that represent it and advising the firms that directly contacting HSBC will not reflect adversely on the firm's performance.  Id. at 55.  The order was stayed pending this appeal.

The Bankruptcy Court imposed sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, the counterpart of

Federal Rule of Civil Procedure 11. The decision is reviewed under the abuse of discretion standard. <u>Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.</u>, 57 F.3d 1215 (3d Cir. 1995). After a careful review of the record, I am constrained to hold that it was an abuse of discretion for the Bankruptcy Court to impose sanctions on the appellants here.

The frustrations of the Bankruptcy Court are understandable; delays caused by a lack of accurate information are unfair to debtors, to creditors, and to the courts. However, I am persuaded that the sanctions were inappropriate in this case, for two reasons: First, because the conduct of the debtors' counsel was at least equally responsible for the difficulties in resolving the status of the mortgage payments, and second, because the record leaves the indelible impression that the appellants were sanctioned less for their specific failings than for the Bankruptcy Court's desire to "send a message" regarding systemic problems in the litigation of bankruptcy cases and the reliance on computer databases in mortgage disputes.[2]

The actions of the debtors' counsel materially contributed to the difficulties in resolving the status of the

---

[2] In addition to the above reasons, I find that the sanctions imposed on Mr. Udren himself were an abuse of discretion. Mr. Udren did not file or sign any paper or argue any motion in the case.

Taylors' mortgage. In an order relating to counsel fees, the Bankruptcy Court held that the debtors' counsel provided legal services that "were below the level of competency required to handle this Chapter 13 case effectively." Order of April 15, 2009 (Document No. 195). Although the errors of the debtors' counsel do not relieve the appellants of their duty to comply with Rule 9011, they are relevant to a finding of sanctionable conduct. Had the debtors' counsel responded to the requests for admissions, or submitted a timely request for a complete accounting, the appellants would have been on notice of the payment disputes and the delays may have been minimized or avoided.

Given the overall posture of this case, I cannot agree that the conduct of the appellants was sanctionable in its own right. As noted above, the Bankruptcy Court had determined at the May 1, 2008 hearing that sanctions would not be imposed based on the Stay Motion. Only Mr. Fitzgibbon (who was not sanctioned) appeared in court for the later hearing. After a close reading of the transcript of the hearings, I am persuaded that the Bankruptcy Court objected to general practices in bankruptcy mortgage disputes, rather than the specific conduct of the appellants. By way of example, the Bankruptcy Court stated in the hearings that:

> I do not have any adverse views about Mr. Fitzgibbon. You know, this is not about Mr. Fitzgibbon. This is

> about when attorneys stand up in this Court and they've been asked to provide loan histories and they can't get it. And it's not just – if it was one young attorney who was having a problem that would be one thing. We wouldn't have done all this if it was one young attorney who didn't know that he could do this. *But I have attorneys that stand here week after week and can't get loan histories.* I've just sat through an hour and a half of this system which is telling me that they should be able to get it not in thirty days, which is the time your attorneys always ask for, but they should be able to get it the next day.

N.T. Oct. 23, 2008 at 107-08 (emphasis added). There is nothing in the record to support a finding that any of the other attorneys referenced are from the Udren firm; to the contrary, the system used by many law firms representing many mortgage holders in bankruptcy cases appears to be at fault. As the Bankruptcy Court stated, "[t]he bottom line from my perspective is that I just want to know when a lawyer stands up in court and says, I want to continue this, I can't get a document. I want to know why. I want to be able to move these cases." N.T. Oct. 23, 2008 at 148.

Understandably, something needs to be done when the bankruptcy courts cannot obtain timely and accurate information. According to the Bankruptcy Court's opinion, the problem of inaccurate mortgage payment information is less likely to arise in the United States Bankruptcy Court for the District of New Jersey because the local rules of that court require that the client certify the truth and accuracy of the averments. Opinion at n.21. Clarity in the rules would benefit all counsel and

8

litigants.

The sanctions imposed in this case were an abuse of discretion, as the Bankruptcy Court already had determined that the Stay Motion did not merit sanctions, and Mr. Fitzgibbon's failure to obtain the accounting (the only event after the denial of the Stay Motion) was an insufficient basis for the imposition of sanctions against the appellants.[3]

The sanctions order therefore will be reversed. Although HSBC did not appeal the sanctions order, because I have concluded that the sanctions against the appellants cannot stand, the order as to HSBC – directing it to send copies of the Bankruptcy Court's opinion to all the attorneys it has retained – is inextricably intertwined with the sanctions against the appellants and must be reversed as well.

An order will be entered.

BY THE COURT:

/s/ John P. Fullam
John P. Fullam,    Sr. J.

---

[3] Mr. Udren testified that Mr. Fitzgibbon could have, and was trained to, approach one of the other attorneys in the firm for assistance in obtaining the required information, but that Mr. Fitzgibbon did not do so. N.T. Oct. 23, 2008 at 106.

9